# Exhibit "K"

# Appellant's Brief in Chief filed December 30, 2005 in Supreme Court Case No. 101,511



No. 101,511

FILED
SUPREME COURT
STATE OF OKLAHOMA
DEC 3 0 2005
MICHAEL S. RICHIE
CLERK

---

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

---

In re: The Lorice T. Wallace Revocable Trust dated December 26, 1974, as
restated effective October 5, 1993 and as amended on February 12, 1998,
The Lorice T. Wallace Irrevocable Trust dated February 8 , 1996, and
The Lorice T. Wallace Irrevocable Trust dated September 11, 1992,
also known as the Lorice T. Wallace Life Insurance Trust

### RONALD J. SAFFA and THE TRUST COMPANY OF OKLAHOMA,

Real Parties in Interest-Appellees,

versus

### STEPHEN P. WALLACE,

Respondent-Appellant

---

### APPELLANT'S BRIEF IN CHIEF

---

Appeal from Tulsa County District Court
Case No. PT-2002-56
Honorable Gregory K. Frizzell

---

*Indirect Contempt of Court*

---

Joan Godlove, OBA No. 10563
2121 South Columbia, Suite 500
Tulsa, Oklahoma 74114-3519
Telephone: (918) 744-0201

December 30, 2005                    **Attorney for Respondent-Appellant**

## INDEX

SUMMARY OF THE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Subject matter jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

12 Okla.Stat. § 2012(B)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

60 Okla.Stat. § 175.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

60 Okla.Stat. § 175.23(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Okla. R. Prof. Conduct 4.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Indirect contempt of court** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## PROPOSITION I

**The Petition filed in PT-2000-21 did not state a case over which the
Subject matter jurisdiction of the District Court extended** . . . . . . . . . . . . . . . . . . 14

*Collins v. Mid-Continent Pipeline Co.,* 1999 OK 56, 6 P.3d 1050 . . . . . . . . . . . . . . 14

*Cooper v. Federal National Bank,* 1935 OK 1217, 53 P.2d 678 . . . . . . . . . . . . . . . 15

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.,*
530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re A.H.,* 195 Ill.2d 408, 748 N.E.2d 183 (2001) . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re A.N.O. v. Ogle,* 2004 OK 33, 91 P.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Malone's Estate,* 42 Colo.App. 453, 599 P.2d 965 (1979) . . . . . . . . . . . . . . . . 14

*Kramme v. Mewshaw,* 147 Md. 535, 128 A. 468 (1925) . . . . . . . . . . . . . . . . . . . . . 15

*Madden v. University Club of Evanston,* 97 Ill.App.3d 330,
422 N.E.2d 1172 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oklahoma Public Employees Association v. Oklahoma Department
of Central Services,* 2002 OK 71, 55 P.2d 1072 . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Richards v. Midkiff,* 48 Haw. 32, 396 P.2d 49 (1964) . . . . . . . . . . . . . . . . . . . . . . 15

*Sumlin Construction Co., L.L.C. v. Taylor,* 850 So.2d 303
(Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Troxel v. Troxel,* 737 N.E.2d 745 (Ind. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

60 Okla.Stat. § 175.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

60 Okla.Stat. § 175.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

60 Okla.Stat. § 175.23(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

60 Okla.Stat. § 175.23(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

90 C.J.S. Trusts § 367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1 Perry, *Trusts and Trustees,* § 411 (7th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**PROPOSITION II**

**If a plaintiff lacks standing when a case is filed, no post-filing event or amended pleading can cure that subject matter jurisdiction defect** . . . . . . . . . . . . . . . 16

*Buttram v. Central States, Southeast and Southwest Health and Welfare Fund,* 781 F.Supp. 1429 (E.D. Mo. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Democratic Party of Oklahoma v. Estep,* 1982 OK 106, 652 P.2d 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re A.N.O. v. Ogle,* 2004 OK 33, 91 P.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kane v. Forest Service of United States,* 205 F.3d 1034 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Minneapolis & St. L. R. Co. v. Peoria & P.U. Ry. Co.,* 270 U.S. 580, 46 S.Ct. 402, 70 L.Ed. 743 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Morrison v. Bestler,* 239 Va. 166, 387 S.E.2d 753 (1990) . . . . . . . . . . . . . . . . . . . . . . . 16

*Roe v. Wert,* 706 F.Supp. 788 (W.D. Okla. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Steger v. Franco, Inc.,* 228 F.3d 889 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Adams,* 470 F.2d 249 (10th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Hale,* 422 U.S. 171 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12 Okla.Stat. § 2801(4)(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

**PROPOSITION III**

**Because Saffa and TCO's standing in PT-2002-56 is based on the void
judgment in PT-2000-21, orders entered in this case are also void** . . . . . . . . . . . . . . . . . . . . .  18

*Fields v. Driesel,* 1997 OK CR 33, 941 P.2d 1000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*In re Driggs,* 1958 OK 107, 325 P.2d 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*LeClair v. Calls Him,* 1925 OK 134, 233 P. 1087 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Morrison v. Bestler,* 239 Va. 166, 387 S.E.2d 753 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Pate v. State,* 1967 OK CR 100, 429 P.2d 542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Valley Vista Development Corporation v. City of Broken
Arrow,* 1988 OK 140, 766 P.2d 344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**PROPOSITION IV**

**The Judgment and Sentence for Indirect Contempt of Court imposed
against Stephen P. Wallace is void on its face** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Burris v. Hunt,* 1998 OK CIV APP 125, 965 P.2d 1003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Busby v. State ex rel. LaFon,* 1969 OK CR 13, 449 P.2d 718 . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Ex parte Hibler,* 139 Okla. 157, 281 P. 144 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Hampton v. Hampton,* 1980 OK 46, 609 P.2d 772 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

21 Okla. Stat. § 568 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

**PROPOSITION V**

**Since the Order on which the Citation for Indirect Contempt of Court
is based violated Wallace's constitutionally-protected right of "access
to the courts," it is not a "lawful order" within the meaning of 21 Okla.
Stat. § 565** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . .  21

*Christopher v. Harbury,* 536 U.S. 403 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Sires v. Gabriel,* 748 F.2d 49 (1st Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Snyder v. Nolen,* 380 F.2d 279 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

U.S. Const. Art IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

Okla. Const. art. II, § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

21 Okla. Stat. § 565 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

**PROPOSITION VI**

**There is no evidence in the record that would support a finding that
his alleged disobedience of the TRO was "willful" within the meaning
or 21 Okla. Stat. § 565** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Henry v. Schmidt,* 2004 OK 34, 91 P.3d 651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Morgan v. National Bank of Commerce of Shawnee,* 1923 OK 230,
648 P.2d 437 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*United States v. Michaud,* 928 F.2d 13, 15 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*United States v. Mourad,* 289 F.3d 174 (1st Cit. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*United States v. Themy-Kotronakis,* 140 F.3d 838 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . .  21

21 Okla. Stat. § 565 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

**PROPOSITION VII**

**The provision in the Judgment for Indirect Contempt of Court that
requires Wallace to submit to a mental health examination or treatment
in lieu of spending 39 days in jail is contrary to Oklahoma law** . . . . . . . . . . . . . . . . . . . . .  22

43A Okla. Stat. § 5-207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

43A Okla. Stat. § 5-208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

43A Okla. Stat. § 5-209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

**PROPOSITION VIII**

**The district court violated Wallace's right to assistance of counsel
guaranteed by the Sixth Amendment of the Federal Constitution** . . . . . . . . . . . . . . . . . . . . . 22

*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) . . . . . . . . . . . . . . . . . 23

*Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942) . . . . . . . . . . 23

*Henry v. Schmidt,* 2004 OK 34, 91 P.3d 651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. McCutcheon,* 86 F.3d 187 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## SUMMARY OF THE RECORD

### Subject matter jurisdiction

On September 19, 2005, appellant Stephen P. Wallace ["Wallace"] raised questions about the

trial court's subject matter jurisdiction over PT-2002-56, an action filed by *former co-trustees* of the

Lorice T. Wallace revocable and irrevocable trusts, in another appeal.[1] [Appellant's Motion for Order

Directing District Court to Dismiss PT-2002-56 for Lack of Subject Matter Jurisdiction ["Juris.

Motion"], Appeal No. 102,346].[2] Facts underlying the "standing" issue Mrs. Wallace raised in PT-

2000-21, the predecessor to PT-2002-56, on April 6, 2000, and which her son Stephen renewed in

Appeal No. 102,346 are summarized below.

Mrs. Wallace executed a Durable Power of Attorney on December 9, 1999, which appointed

her son as her "attorney-in-fact" and nominated him to serve as guardian if protective proceedings for

her person or estate were subsequently commenced. [Power of Attorney, Juris. Motion, Apx., p. 1a,

Appeal No. 102,346]. Copies of this document were sent to TCO and Saffa, Mrs. Wallace's nephew

and co-trustee, together with TCO, of her revocable and irrevocable trusts.[3] Four days later, Saffa and

---

[1] On September 23, 2005, appellant filed papers in this appeal asking the Court to take judicial notice of the Jurisdictional Motion he had just filed in Appeal No. 102,346. This request was denied by Order dated September 26, 2005. Appellant's Motion for a stay of further proceedings in this appeal pending determination of the jurisdictional issue raised in Appeal No. 102,346, i.e., whether Ronald J. Saffa and the Trust Company ["TCO"], the real parties in interest and complainants in the contempt proceeding, had standing to file PT-2000-21 or PT-2002-56, was filed on October 10, 2005. The Court has not ruled on that motion.

[2] Because issues of Saffa and TCO's standing and the trial court's subject matter jurisdiction was raised for the first time on appeal, appellant's citation to the trial court record "where such [jurisdictional] facts occur are few in number. Instead, the Court is being asked to take judicial notice of relevant "jurisdictional" facts in the appellate record in Appeal No. 102,346, and a writ proceeding, *Wallace v. Frizzell,* Sup. Ct. No. 102,813, that was filed on November 28, 2005.

[3] Saffa drafted a Restatement to Mrs. Wallace's Revocable Trust after her husband's death in 1990, and inserted himself and TCO as co-trustees of her Trusts. [Wallace Aff., ¶ 3, Juris. Motion, Attached Appendix ["Apx."], p. 66a, Appeal No. 102,346; Dear Aunt Lorice Letter (Aug. 30, 1993), Aplt's Combined Reply to Saffa and TCO's Responses to Juris. Motion ["Aplt's Combined Reply"], Attached Appendix ["Apx."], pp. 1a-3a, Appeal No. 102,346 (filed Oct. 20, 2005)].

TCO "caused" guardianship proceedings to be initiated against Mrs. Wallace, not in their names, but in the name of Patricia Hastings, the third of her children and sister of Stephen, Mary Roma Jage, and Lisa Wallace. [Tr. Vol. I, p. 189, line 22- p. 200, l. 3; Petition, PG-99-556, Sealed Excerpts from Appendix to Brief in Support of Application to Assume Original Juris . . . . ["Sealed Writ Apx."], p. 6, Sup. Ct. No. 102,813; Wallace Aff., ¶ 3, Juris. Motion, ["Apx."], p. 66a, Appeal No. 102,346].

On March 13, 2000, immediately after the Hon. Robert Perugino, the judge presiding over PG-99-556, stated on the record that Mrs. Wallace "ha[d] not been determined to be incapacitated" and "ha[d] the right to make [her] own decisions," [Petition, *Lorice T. Wallace v. Trust Co. of Okla. and Ronald J. Saffa,* ¶¶ 28-29 & Exh. A, Tulsa Cty Dist Ct. No. CJ-2000-1684, Juris. Motion, Apx., p. 54a, Appeal 102,346], she amended her Revocable Trust to remove and replace the acting trustees. The operative document, titled "Instrument Altering Trust," provides in pertinent part:

> Section 3.04 <u>Successor Trustees</u> should be amended in that my son, **Stephen P. Wallace,** my daughter, **Mary Roma Wallace Jage,** and **Bank One** should be inserted as Successor Co-Trustees and that Ronald J. Saffa and the Trust Company of Oklahoma are hereby removed as Successor Trustees of this Trust. [Instrument Altering Trust, Petition, *In re: Petition of Trust Co. of Okla. and Ronald J. Saffa,* ¶ 4 & Exh. F, Tulsa Cty Dist. Ct. No. PT-2000-21 (filed Mar. 24, 2000), Juris. Motion, Apx., pp. 5a, 40a-41a, Appeal No. 102,346 (emphasis in original)].

On March 23, 2000, copies of the Instrument Altering Trust were faxed to Saffa and Thomas W. Wilkins, President and Chief Executive Officer of TCO, by Robert Lawrence, a lawyer who represented Mrs. Wallace in PG-99-556. Letters he faxed the previous afternoon notified Saffa and TCO that they had been removed as co-trustees of Mrs. Wallace's Revocable Trust and that Stephen, Mary Roma Jage, and Bank One had been named successor co-trustees. Those letters also asked Saffa and TCO to name appellant Stephen Wallace, Mary Roma Wallace Jage, and Bank One as successor co-trustees of Mrs. Wallace's Irrevocable Trusts, then resign as co-trustees of those trusts and fax written confirmations to Lawrence regarding the requested transfer of assets. [Lawrence Letters, Petition, ¶ 4 & Exh. B-E, PT-2000-21, Juris. Motion, Apx., pp. 36a-39a, Appeal No. 102,346].

2

On March 24, 2000, James E. Poe, the lawyer who filed PG-99-556, sued Mrs. Wallace in a retaliatory pleading styled *"Petition of the Trust Company of Oklahoma and Ronald J. Saffa, Trustees, for instructions and construction of Trust,"* and numbered PT-2000-21, purportedly as "Attorney[] for Trustees."[4]  [Petition, PT-2000-21, Juris. Motion, Apx., pp. 5a-41a, Appeal No. 102,346].  This petition alleges that TCO and Saffa *"are* the duly designated and *acting* trustees of the Lorice T. Wallace Revocable Trust." [Petition, ¶ 1, Juris. Motion, Apx., p. 5a, Appeal No. 102,346 (emphasis added)].

Other allegations in the petition filed in PT-2000-21 refer to documents attached as "Exhibits 'B' through 'F,' [that] *purport to show* amendment to the Trust Agreement and removal of [Saffa and TCO] as trustees." [*Id.,* ¶ 4, Apx., 5a (emphasis added)].  Guardianship proceedings Saffa and TCO initiated against Mrs. Wallace are the subject of one paragraph; two refer to her *alleged,* not adjudicated, "incapacity." [*Id.,* ¶¶ 2-4, Apx., 5a].  The style of this Petition refers to "construction of the Trust"; its prayer "seek[s] direction of the Court and instructions as to Trustees' duties and responsibilities particularly with reference to Exhibits referenced herein and the Trust Agreement." [*Id.* at p. 2, Apx., p. 6a].

On April 6, 2000, Mrs. Wallace challenged the *former co-trustees'* standing to file PT-2000-21 in a Motion to Dismiss.  Pertinent arguments from the trustor's motion are quoted below:

[TCO and Saffa] purport to bring [PT-2000-21] under 60 O.S. § 175.23.  However, *an examination of the petition and section 175.23 clearly shows that the Petitioners have no standing to bring a claim under this section.*

Title 60, section 175.23(C) defines those persons who may bring an action under this statute.  Those persons include a trustee, a beneficiary, or any person affected by the

---

[4]  Poe sought to create the impression that he was representing TCO in PT-2000-21, as well as Saffa, when, in fact, there is no documentary evidence that establishes that TCO retained Poe to serve as its attorney in PT-2000-21 or that TCO authorized POE to commence that trust action. Saffa, not Saffa and TCO acting jointly as co-trustees, paid Poe for his services in PT-2002-256.  Thomas Wilkins, president and CEO of TCO did not have authority to initiate litigation in his capacity as President and CEO of TCO in March 2000. [Godlove Aff., ¶¶ 4-7, Petitioner's Supp. Apx., pp. 120-31, Sup. Ct. No. 102,813]  The legal significance of these facts is addressed on page 15, *infra.*

administration of the trust estate. *Petitioners are no longer trustees, as they admit in paragraph 4 of the petition.* Petitioners' desire to continue to receive trustee fees does not make them beneficiaries of the Trust. Nor are Petitioners creditors of the Trust or of the beneficiaries such as would make them persons affected by the administration of the trust estate. Thus petitioners have no standing to bring an action under 60 O.S. § 175.23. *Consequently, under 12 O.S. § 2012(B)(1) this petition must be dismissed for lack of subject matter jurisdiction.* [Motion to Dismiss, ¶¶ 6-7, PT-2000-21, Aplt's Combined Reply, Apx., pp. 6a, 7a, Appeal No. 102,346 (emphasis added)].

Facts underlying this *"standing"* challenge (and Mrs. Wallace's *previously-filed claim for breach of fiduciary duty*)[5] were summarized as follows in her Motion to Dismiss:

On December 13, 1999, Patricia Hastings filed a Petition for Appointment of a Guardian for Mrs. Wallace. Ms. Hastings is not driving the litigation, however. The real parties in interest are Petitioners [Saffa and TCO].

*Petitioners are former trustees* of the Lorice T. Wallace Revocable Trust ("Trust") and are paying the legal fees of Ms. Hastings. Petitioners have admitted that they instructed Ms. Hastings to file this litigation and are continuing to direct[] this litigation. . . . *Essentially, the trustees brought suit against the trustor.*

*Petitioners stood to benefit from a determination that Mrs. Wallace is incapacitated; such a finding would make it much harder for Mrs. Wallace to remove them as trustees. Petitioners were in position to collect trustees' fees from the Trust for several decades and to be removed as trustees would remove this source of income.*

*[U]pon learning of this self-dealing by Petitioners, Mrs. Wallace sent letters to Petitioners, requesting that they cease using Trust money to fund litigation against Mrs. Wallace.* The Petitioners refused to cease spending the money and replied that they would spend the Trust's money in any way they saw fit. At that point, Mrs. Wallace took steps to remove Petitioners as trustees. On March 13, The Honorable Robert Perugino announced from the bench that Mrs. Wallace had the right to make her own decisions. *On the evening of March 13, Mrs. Wallace exercised the power reserved to her as the grantor of the Trust and executed an amendment altering the Trust. The amendment, attached as "Exhibit "A," removed Petitioners as trustees* and replaced them with Stephen P. Wallace, Mary Roma Wallace Jage and Bank One.

---

[5] Litigation that ensued from Saffa and TCO's initiating the guardianship preceeding, their refusal to honor the amended Trust instrument, their refusal to turn trust assets over to Bank One, their filing PT-2000-21, and other conflict-of-interest laden breaches of trust led Mrs. Wallace to file a six-count Verified Petition against the *former trustees* of her revocable and irrevocable trusts on April 5, 2000. [Petition, *Lorice T. Wallace v. Trust Co. of Okla. and Saffa*, ¶¶ 6-29, 32-36, 40, 44-45, 50-51, 62-66, CJ-2000-1684, Juris. Motion, Apx., pp. 42a-54a, Appeal No. 102,346].

4

Petitioners received notice to relinquish the trust assets to Bank One. *Petitioners have refused to turn over the trust assets to Bank One and refused to honor the amended trust.* Petitioners are now attempting a collateral attack on Judge Perugino's March 13 statement [in PG-99-556] through their petition for instructions and construction of trust. [Motion to Dismiss, at ¶¶ 2-5, PT-2000-21, Aplt's Combined Reply, Apx., pp. 6a, 7a, Appeal No. 102,346 (emphasis added)].

On April 17, 2000, Mrs. Wallace filed a writ proceeding that challenged Judge Perugino's authority to take further action in PG-99-556 because he had not adjudicated the issue of her alleged incapacity within the 30 day period prescribed by statute. [Brief in Support of Appl. to Assume Orig. Juris. and Writ of Prohibition, *Lorice T. Wallace v. Hon. Robert Perugino,* Sup. Ct. No. 94,446, Apllt's Combined Reply, Apx. 12a-23a, Appeal No. 102,346].

Poe filed two papers in PT-2000-21 on April 24, 2000, purportedly on behalf of both *former trustees.* One is a Response to Mrs. Wallace's motion to dismiss. It asserts, in conclusory terms, that the Instrument Altering Trust did not "automatically and instantly" modify the Revocable Trust.[6] [Response to Motion, p. 1, PT-2000-21, Writ Apx., p. 82, Sup.Ct. No. 102,813]. The other is a legally and factually unsupported Application for injunctive relief, i.e., a Temporary Restraining Order directed at appellant Stephen P. Wallace, who was then serving as one of three *validly-chosen* Successor Co-Trustees of The LTW Revocable Trust. Saffa's motion, excerpts of which are quoted

---

[6] The plain language of the Trust provisions cited to support this assertion establish their inapplicability. Section 3.04 of the 1993 Restatement of the Lorice T. Wallace Revocable Trust provides that "[a]fter the death of the Grantor, or in the event Grantor becomes incapacitated, mentally or physically, RONALD J. SAFFA and THE TRUST COMPANY OF OKLAHOMA shall serve as [successor] Trustees." That section does not define incapacity, mental or physical. [LTW Revocable Trust, Writ Apx., p. 18, Sup. Ct. No. 102,813]. Section 9.07 defines incapacity; however, that section only relates to the incapacity of any individual trustee, not the Grantor. Mrs. Wallace was not serving as a trustee of her revocable trust on March 13, or March 24, 2000; she was simply the grantor of that trust. [*Id.,* Writ Apx., p. 33]. Section 4.02 of Amendment Number One defines "the incapacity of Grantor," but only "[f]or the purposes" of that provision which pertains to Mrs. Wallace's desire to remain in her home rather than being placed in a care facility. [*Id.,* Writ Apx., p. 40]. Saffa and TCO conceded the inapplicability of these provisions by engaging in the fraudulent conduct summarized on pages 7 and 8, *infra,* instead of urging the court to construe them in PT-2000-21.

5

below, was designed to accomplish one goal – *undermine and override* business decisions Mrs.

Wallace made and *was competent to make* on March 13, 2000, when she signed the Instrument

Altering Trust and removed Saffa and TCO as co-trustees of the LTW Revocable Trust.

> [P]ursuant to [the Instrument Altering Trust] Stephen Wallace claims to be a successor
> trustee of the LORICE T. WALLACE REVOCABLE TRUST and is interfering with
> Petitioners efforts to perform their duties and responsibilities as Trustees.  Conse-
> quently urgent need exists for the Court's construction of the Trust provisions to the
> extent of determining if in fact Petitioners continue as lawful Trustees . . . .  If it be
> determined they are to continue as Trustees then appropriate order should also issue
> restraining Stephen Wallace or others from interfering with Trustees in the perfor-
> mance of such duties and responsibilities. (Appl. for Interim Order, PT-2000-21, Writ
> Apx., pp. 79-80, Sup.Ct. No. 102,813].

The Application for Interim Order states that it was to be heard the next day.  However, no

Order was entered on April 25, 2000. [Docket Sheet, PT-2000-21, Writ Apx., p. 87, Sup. Ct. No.

102,813].  Nor did Patricia Hastings, improperly identified as the real party in interest, respond to the

Petition for Writ of Prohibition filed on her mother's behalf.  [Docket, *Lorice T. Wallace v. Perugino*,

Sup. Ct. No. 94,446].  Instead, that original proceeding[7] and three lower court actions that pitted co-

trustees (or *former co-trustees*) against trustor "appear to have been resolved" to the detriment of Mrs.

Wallace and her children, who were beneficiaries of her Revocable and Irrevocable Trusts, by the

"agreed" Order that was filed in the guardianship proceeding on May 9, 2000.  [Order (filed May 9,

2000), PG-99-556, Sealed Writ Apx., pp. 96-103; Sup. Ct. No. 102,813; Dismissal with Prejudice

(filed May 9, 2000), CJ-2000-1684, Writ Apx., p. 104, Sup. Ct. No. 102,813; Agreed Order . . ., PT-

2000-21 (filed May 10, 2000), Writ Apx., pp. 107-16, Sup. Ct. No. 102,813; Motion to Dismiss

---

[7] On May 10, 2000, after urging this Court to issue a writ prohibiting Judge Perugino from
taking further action in the guardianship proceeding because he had exceeded his statutory authority,
attorneys purportedly representing Mrs. Wallace moved for "voluntary dismissal" of that original
action.  By way of explanation, they informed this Court that "the action pending in the district court
has been resolved by agreement between Wallace and the Real Party in Interest, and this agreement
has been memorialized by an agreed order entered by the district court on May 9, 2000," [Motion to
Dismiss [Original Proceeding], Sup. Ct. No. 94,446, Writ Apx., p. 105, Sup. Ct. No. 102,813].

[Original Proceeding], Sup. Ct. No. 94,446, Writ Apx., p. 105, Sup. Ct. No. 102,813].

Findings in that Order, which appears to have been drafted by TCO's lawyer[8] days before he signed any paper filed in PT-2000-21, *were designed to restore Saffa and TCO's status as co-trustees of Mrs. Wallace's Revocable and Irrevocable Trusts,* seven weeks after their removal, *not* protect Mrs. Wallace from persons who might take advantage of her *alleged "incapacity"*:

> [A]ny and all documents executed by Ms. Wallace on or after December 13, 1999 . . . purported to or asserted as effecting any modification of Ms. Wallace's trust documents be and the same are REVOKED, NULL and VOID in their entirety. [Order, ¶ 8, PG-99-556, Sealed Writ Apx., pp. 98-99, Sup. Ct. No. 102,813].

Although the Order filed in PG-99-556 on May 9, 2000 purports to be an "agreed" Order, the signature of Mary Roma Wallace Jage, who appeared *pro se* and signed the Order as "Interested Party now Limited Guardian of the Person [of Lorice T. Wallace]," was obtained by Saffa and Milton, TCO's lawyer, by fraud and breach of ethical duties imposed on both of those lawyers by Rule 4.3 of the Oklahoma Rules of Professional Conduct.[9]

The following facts, set out in the Jage Affidavit filed in Appeal No. 102,346 on September 19, 2005, describe statements Saffa and Milton made to her, as the Wallace's oldest daughter and a contingent beneficiary of her mother's revocable and irrevocable trusts, to procure the "agreed" Order in PG-99-556, statements neither attorney has *ever refuted* in a counter-affidavit:

---

[8]  A letter written by Terry Barker, Mrs. Wallace's lead counsel, to James C. Milton, TCO's attorney, on May 4, 2000, contains statements that raise serious conflict of interests questions. One such statement suggests that Milton insert language in the "agreed" Order subsequently entered in PG-99-556 that would revoke all previous Durable Powers of Attorney Mrs. Wallace had signed. Another asks TCO to pay his firm's legal fees for representing Mrs. Wallace in cases Saffa and TCO filed *against* her [Barker Letter, Appellant's Combined Reply, Apx., pp. 24a-25a, Appeal No. 102,346]. These statements, when read together, suggest that on and after May 4, 2000, Barker was not representing his client's best interests, but was furthering his firm's financial interests.

[9]  Rule 4.3 provides that "[i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. A lawyer shall not give advice to such a person other than the advice to secure counsel, if the interests of such person are, or have a reasonable possibility of being, in conflict with the interests of the client."

On or about May 9, 2000, my cousin Ronald J. Saffa and James C. Milton told me that I would not be appointed limited guardian of the person of my mother, *unless I signed a document which stated that any and all documents that my mother had signed between December 13, 1999 and May 9, 2000 that pertained to her trusts were "void."* (Jage Affidavit, ¶ 5, Apx., p. 91) (emphasis added).

On May 10, 2000, Saffa and TCO filed an amended pleading in PT-2000-21.[10]  This petition asserted, for the first time, that Saffa and TCO are co-trustees of Mrs. Wallace's irrevocable trusts, as well as the LTW Revocable Trust. [First Amended Petition, ¶¶ 1-2, PT-2002-56, Writ Apx., p. 117, Sup. Ct. No. 102,813].  Other allegations refer to Ms. Jage and allude to the May 9, 2000 Order in PG-99-556, the guardianship proceeding:

[Saffa and TCO] have subsequently learned [since filing the Original Petition in this action on March 24, 2000] that Lorice T. Wallace, by and through her limited guardian Mary Roma Wallace Jage, has determined that the Petitioners have acted and continue to act in their capacity as successor co-trustees of the LTW Revocable Trust.

Petitioners have further learned that Lorice T. Wallace, by and through her limited guardian Mary Roma Wallace Jage, has expressed a desire to have this Court accept supervision of the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Life Insurance Trust . . . .  [*Id.*, ¶¶ 7-8, Writ Apx., p. 118, Sup. Ct. No. 102,346].

The *"standing"* issue raised by Mrs. Wallace's Motion to Dismiss was *never adjudicated.*  The Hon. Gregory K. Frizzell declared that motion "moot" on November 6, 2000. [Order, PT-2000-21 (filed Nov. 6, 2000), Aplt's Combined Reply, Apx., p. 29a, Appeal No. 102,346].  Evidence that establishes that TCO did not authorize the filing of PT-2000-21 on March 24, 2000, i.e., that TCO and Saffa did not act "jointly" in making that decision, as the trust instrument requires,[11] and that only Saffa, not Saffa and TCO, paid Poe's fees for filing the petition on March 24, 2000, and papers Poe filed, purportedly on behalf of both trustees a month later, first came to light on December 16, 2005.

_____

[10]  The Amended Petition identifies Poe and Lee Levinson as Saffa's lawyers and Milton as TCO's lawyer. [First Amended Petition at 1, PT-2002-56, Writ Apx., p. 117, Sup. Ct. No. 102,813].

[11]  Section 7.08 of the LTW Revocable Trust provides that "[w]hile two or more Trustees are serving hereunder, the powers, duties and authorities of the Trustees *shall be exercised by them jointly.* [LTW Revocable Trust, p. 16, Writ Apx., p. 30, Sup. Ct. No. 102,813].

8

The judgment entered in PT-2000-21 on March 25, 2002, rests on the fraudulently-procured finding in Judge Perugino's May 9, 2000 Order in PG-99-556 which states that certain documents attached to the Petition in PT-2000-21 are "null, void, and of no force or effect." That judgment also finds that Saffa and TCO are co-trustees of Lorice T. Wallace's Revocable and Irrevocable Trusts. [R. 1783, Petitioners' Tr. Exh. 1, Journal Entry of Judgment, ¶ 7, p. 2 (filed Mar. 25, 2002), PT-2000-21].

The Petition TCO and Saffa filed in PT-2002-56, the pending action involving Mrs. Wallace's trusts, relies on the March 25, 2002 judgment in PT-2000-21 to support TCO and Saffa's claim to be "co-trustees" of the LTW revocable, irrevocable, and life insurance trusts. [Petition for Instructions, ¶¶ 5-6, PT-2002-56, Writ Apx., p. 128, Sup. Ct. No. 102,813].

### Indirect contempt of court

On March 26, 2004, Saffa and TCO, as *purported* "Successor Co-Trustees" of Mrs. Wallace's revocable and irrevocable trusts, and Saffa, in his individual capacity, filed a Motion for Temporary Restraining Order, Preliminary and Permenant [*sic*] Injunction and Request for Expedited Hearing. [R. 922, Motion for TRO]. This motion identifies three parties to the contempt proceeding, i.e.:

> Trustees [Saffa and TCO] have been appointed as successor co-trustees of the Trusts. The validity of the Trustees' appointment and continued status as successor co-trustees of the Trusts has been determined by a Final Order of this Court.

> Saffa, as trustee, and in his individual capacity, and the Trust Company and its officers, individually, have been sued many times in many different Courts by Stephen [Wallace] for many different claims, all of which arise from their involvement with the Trusts.

> Stephen is an individual and beneficiary of the Trusts who has sought relief from this Court on many occasions. [*Id.*, p. 2].

This motion does not set out "jurisdictional" facts, but simply asserts that the court has the power to grant Saffa and TCO the sweeping injunctive relief they seek, i.e.:

> This Motion seeks relief in the form of injunctive relief against Stephen pursuant to 12 Okl. St. Ann. § 1382 for interference with administration Trusts and wasting of the Trust's assets by incurring needless litigation costs defending numerous civil proceeding[s] in various other Courts. This Court has assumed jurisdiction over the Trusts in this case. Therefore, this Court has subject matter jurisdiction in this case. [*Id.*, p. 1].

9

Facts which Saffa and TCO claim entitle them to the injunctive relief prayed for include (1) the number of trust-related lawsuits Wallace had filed; (2) a bankruptcy judge's observation that "'not one single time has Mr. Wallace prevailed in any way, shape or form on the merits of those actions,'" and (3) what Saffa and TCO characterize as "Wrongful Allegations," e.g.,

> Stephen has accused Saffa and TCO of engaging in actual fraud, fraud upon various Courts, including [the Tulsa County District Court], theft, criminal and civil conspiracy (including alleged conspiracies involving participation by many of the Judges who have ruled against Stephen) . . . . and various other intentional torts against Stephen and his family . . . .  [R. 922, Motion for TRO, p. 2].

A cursory review of the records in PG-99-556, PT-2000-21, and PT 2002-56 suggests that *sworn denials* by Saffa, Milton, or TCO's president of Wallace's allegations of actual fraud, fraud on the court, theft, collusion, and/or conspiracy have never been filed in any of those Tulsa County District Court cases.[12]  Nor does it appear that the *former co-trustees* have ever acknowledged that Mrs. Wallace *had the legal capacity, as a matter of fact, and the right under Oklahoma law and express provisions of the trust instrument to remove Saffa and TCO as co-trustees and appoint her son*

---

[12]  The following conclusory factual contentions appear in papers Saffa and TCO filed on March 27, 2003, almost one year to the day before they sought a TRO against Wallace in PT-2002-56:

> Since the entry of the March 25, 2002 Journal Entry of Final Judgment in Case No. PT-2000-21, Respondents Stephen P. Wallace and Roma Jage have challenged the trustees on various issues.  These issues have been placed before the [District] Court for instructions in this action Case No. PT-2002-56.  The trustees are privileged in seeking court instructions regarding issues related to the administration of the trusts.  As a result, no breach of fiduciary duty can be established.  In any event, the successor co-trustees have committed no breach of any duty owed to [Lorice T. Wallace,] the beneficiary of the referenced trusts, nor have the successor co-trustees breached any duty owed to the contingent remainder beneficiaries of the trusts.

> Finally, the successor co-trustees have displayed no hostility to [Lorice T. Wallace,] the beneficiary of the referenced trusts.  The successor co-trustees have displayed no hostility to the contingent remainder beneficiaries of the referenced trusts, but instead have endeavored to protect Mrs. Wallace and themselves from the outrageous, abusive, and overly litigious activities of Respondents Stephen P. Wallace and Roma Jage. [R. 354, 356-57, Petitioners' Response to [Roma Jage's] Amended Application for Order Replacing Trustees, pp. 3-4 (filed Mar. 27, 2003)].

10

*Stephen Wallace, her daughter Mary Roma Jage,[13] and Bank One[14] in their stead by amending
Section 3.04 of that Trust, as she did on March 13, 2000.*

The temporary relief sought by the *former trustees'* March 26, 2004 motion was granted in an

Order, prepared by their attorneys, signed by the district judge on April 20, 2004, and filed April 21,

2004. That Order provides in pertinent part:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Court
> having previously assumed jurisdiction over the referenced trusts and Trustees and the
> subject matter thereof, you Stephen P. Wallace, individually or in any other purported
> *pro se* or representative capacity on behalf of any other person or entity are hereby
> restrained, enjoined and prohibited from filing lawsuits or commencing legal
> proceedings of any kind, in any court or jurisdiction except this Court, based upon any
> allegations of acts, events, transactions or circumstances in any manner related to or
> concerning the Trusts or the Trustees, in any capacity. [R. 1017, 1020-21, Temporary
> Restraining Order ["TRO"], pp. 4-5]

There is no evidence in the record which establishes that Wallace received a copy of the TRO

on or before April 30, 2004. [Tr., Vol. I, p. 217, line 16 - p. 218, line 12; Tr., Vol. II, p. 275, lines 8-

10]. Nor is there any evidence that Wallace ever admitted violating the TRO. Instead, Saffa and TCO

sought to carry their burden of proof, as complainants, on the "willful" element of their charge of

indirect contempt by suggesting that there was no evidence in the record to show that Wallace did not

have notice of the TRO before he filed a civil rights action in the United States District Court for the

District of Columbia on April 30, 2004. [TR., Vol. II, p. 283, lines 13-18].

On May 27, 2004, the *former co-trustees,* through Saffa, filed an Application for Citation for

Contempt. That motion incorporates the TRO by reference, asserts that a copy of that Order was

---

[13] On August 13, 2004, TCO sought and obtained an Order restraining Mary Roma Wallace
Jage, a duly-appointed successor co-trustees of her mother's trusts and beneficiary of those trusts, from
entering TCO's premises or communicating directly with TCO's employees. [R. 1222, Appl. for
Temporary Restraining Order; R. 1225, Wilkins Aff.; R. 1227, Order granting TRO].

[14] On March 15, 2004, TCO's lawyers prepared a brief for lawyers purportedly representing
Bank One in PT-2003-46 to sign recommending that TCO be named trustee of the newly-created Lisa
Frances Wallace special needs trust. [Aplt's Reply to Bank One's Response to Motion for Order
Requiring Counsel to Produce Proof of Authority to File PT-2003-56, pp. 3-10 & Apx., pp. 1a-41a].

11

served on Wallace by regular, not certified, mail on April 21, 2000, and that "[w]ith full notice of the aforesaid proceedings and order, said Stephen P. Wallace did nevertheless on April 30, 2004 commence another lawsuit or legal proceeding" which named "the Trustees herein" and concerned "alleged actions pertaining to the Wallace Family Estate." Saffa and TCO contended that the filing of that complaint "is in clear violation of this Court's April 21st restraining order and constitutes an indirect contempt of Court" for which Wallace should be cited and "after opportunity for hearing be sanctioned for contempt of Court in accordance with statutory provisions and legal proceedings." [R. 1034, 1035, Appl. for Citation for Contempt]. The district judge, who was a named defendant in the new action, signed an Order for Citation for Contempt on May 27, 2004. [R. 1055, Order].

The district court conducted a pretrial conference on the contempt issues on September 2, 2004, and entered a Pretrial Conference Order that same day. This Order reflects that the trial was set for September 9, 2004, at 9:30 a.m. [R. 1273, 1276, Pretrial Conf. Order].

On September 7, 2004, after filing papers in the Clerk's Office related to his alleged contempt, Wallace took file-stamped copies to Judge Frizzell's chambers. The Judge asked Wallace to step into his chambers, where he told Wallace he could purge his contempt by dismissing the federal civil rights action which gave rise to the contempt citation. After seeking the advice of counsel, Wallace had dismissals prepared and sent to Washington, D.C. by Federal Express, where they were filed the next day. File-stamped copies of the dismissals were faxed to Wallace so he could file papers in PT-2002-56 on September 8, 2004, that would establish that Wallace did what Judge Frizzell said he needed to do to purge the alleged indirect contempt. Wallace filed this paper, titled Request for the Court to Take Judicial Notice that Defendant Beneficiary Has Purged Contempt of Court Charges and Motion for Order Dismissing Citation for Contempt, at 12:51 p.m. on September 8, 2004, then delivered filed-stamped copies to Judge Frizzell's chambers and counsel for Saffa and TCO. [R. 1317-20, Req. for Jud. Notice and Motion for Order Dismissing Citation for Contempt; Docket, PT-2002-56].

On September 9, 2004, at the time originally set for the trial of the contempt charge, Wallace appeared for what he expected to be a brief hearing on his Motion to Dismiss and request for judicial notice that he filed on September 8, 2004. After going on the record, Judge Frizzell acknowledged that he had told Wallace that he could purge the pending charge of indirect contempt if he dismissed the action he had filed in Washington, D.C. on April 30, 2004. Judge Frizzell also acknowledged that he had seen documents attached to Wallace's request for judicial notice and motion to dismiss which, on their face appeared to be dismissals without prejudice of the district court action and an appellate proceeding, but questioned the efffectiveness of the district court dismissal, given the fact that certain defendants in that action had been served. [TR., Vol. I, pp. 16-19]. When Saffa's lawyer objected and argued that under the Supreme Court's decision in *Henry v. Schmidt*, 2004 OK 34, 91 P.3d 651, Oklahoma district courts no longer had authority to permit persons, like Wallace who had not been found guilty of indirect contempt, to purge their alleged indirect contempt before they were tried for contempt, Judge Frizzell said the case would proceed to trial. [Tr., Vol. I, pp. 8 - 12, 33, 37, 38].]

Wallace requested a continuance of the September 9, 2004 trial setting and renewed his request for assistance of counsel. Both requests were denied and a jury was empaneled. [TR., Vol. I, p. 33]. The trial began on September 9, 2004, ended September 10, 2004, after the jury returned a guilty verdict on the indirect contempt charge. [R. 1372, Verdict Form].

On November 23, 2004, after receiving recommendations from Saffa and TCO, the real parties in interest, the Court entered its Judgment and Sentence for Indirect Contempt of Court. [Judgment, R. 1471-76]. The Judgment does not recite facts upon which the alleged indirect contempt of court was based; it simply incorporates those facts by reference. [*Id.,* R. 1471]. The Judgment also imposes penal sentences, i.e., it sentences Wallace "to serve a term of two months (60 days) in the Tulsa County Jail with the latter 39 days thereof being suspended [if he undergoes thorough mental health examination and submits to any recommended treatment]." [*Id.,* R. 1472-73]. The Judgment also

13

orders Wallace to "be fined in the penal sum of $26,200.000, being a sum of $200.00 per day of 131

days, the time period during which he maintained the lawsuit contemptuously commenced in the

United States District Court for the District of Columbia . . . ." [*Id.,* R. 1474].

## PROPOSITION I.

### The Petition filed in PT-2000-21 did not state a case over which the subject matter jurisdiction of the District Court extended.

"Where the pleadings state a case over which the jurisdiction of the court extends, jurisdiction

attaches and the court has the power to hear and determine the issues involved." *In re A.N.O. v. Ogle,*

2004 OK 33, ¶ 9, 91 P.3d 646, 649. Subsection (A) of 60 Okla.Stat. § 175.23 gives district courts

original jurisdiction to decide certain matters regarding trusts.

"Where a statute names the parties granted [the] right to invoke its provisions, . . . such parties

*only* may act." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 120 S.Ct.

1942, 1947, 147 L.Ed.2d 1 (2000)) (emphasis added). Those named as parties granted the right to

invoke § 175.23 are *"trustee[s],* beneficiar[ies], or person[s] affected by the administration of the trust

estate." *See* 60 Okla.Stat. § 175.23(C). Section 175.23(C) does not name *former trustees* as persons

who may file actions under § 175.23(A).

Saffa and TCO were *removed* as co-trustees of the Revocable Trust on March 13, 2000, when

Mrs. Wallace amended the trust instrument.[15] As *former co-trustees,* they lacked standing to invoke

the district court's jurisdiction under § 175.23 when the Petition in PT-2000-21 was filed. *See, e.g.,*

*In re Malone's Estate,* 42 Colo.App. 453, 455-56, 599 P.2d 965, 967 (1979) (co-trustee could not

continue to prosecute appeal on behalf of trust after he was removed as trustee, i.e., he lacked standing

to represent the trust).

---

[15] Such action is expressly authorized by Oklahoma law. *See* 60 Okla.Stat. § 175.21 (trustor may relieve trustee or add others). Saffa noted, in 1993, that Mrs. Wallace retained the power to amend her Revocable Trust. [Dear Aunt Lorice Letter, Aplt's Combined Reply, Apx., p. 1a, Appeal No. 102,346].

14

Saffa and TCO's standing, that is, their right to sue under § 175.23, was a right that **depended on their status at the time PT-2000-21 was filed.** Because they lost their status as "co-trustees" of the LTW Revocable Trust and were notified of that fact **before** March 24, 2000, Saffa and TCO could not represent that Trust in PT-2000-21 or any other case, including PT-2002-56, after that date.

Even if Saffa and TCO, as former co-trustees of the LTW Revocable Trust, had standing to sue,[16] the act of filing the Petition in PT-2000-21 was **"a nullity"** because TCO did not join Saffa in authorizing Poe to take that action.[17] *See, e.g., Madden v. University Club of Evanston,* 97 Ill.App.3d 330, 422 N.E.2d 1172, 1174 (1981) (co-trustee lacked standing to pursue claim on behalf of trust where other co-trustee had not authorized the litigation); *Richards v. Midkiff,* 48 Haw. 32, 41, 396 P.2d 49, 55 (1964) (whether trust estate should maintain a legal action requires concurrence of all trustees) (citing 1 Perry, *Trusts and Trustees,* § 411 (7th ed.); 90 C.J.S. Trusts § 367); *Kramme v. Mewshaw,* 147 Md. 535, 553, 128 A. 468, 475 (1925) (appeal dismissed where it was prosecuted by one of two trustees); *cf. Cooper v. Federal Nat'l Bank,* 1935 OK 1217, ¶ 18, 53 P.2d 678, 682 (co-trustees cannot act independently of one another; where trustees disagreed, act of each was a nullity).

**When a party without standing purports to commence an action, the trial court acquires no subject matter jurisdiction and any judgment it enters is void.** *See Sumlin Constr. Co., L.L.C. v. Taylor,* 850 So.2d 303, 315 (Ala. 2002); *accord, Collins v. Mid-Continent Pipeline Co.,* 1999 OK 56, ¶ 10, 6 P.3d 1050, 1053 (case is said to be *coram non judice* and legally invalid when court in which it is brought has no jurisdiction to settle dispute); *In re A.H.,* 195 Ill.2d 408, 416, 748 N.E.2d 183, 189

---

[16] **Under Oklahoma law, parties invoking a district court's subject matter jurisdiction have the burden of establishing their standing, when contested.** *See Oklahoma Public Employees Ass'n v. Oklahoma Dep't of Central Servs.,* 2002 OK 71, ¶ 21, 55 P.2d 1072.

[17] Except for its attorney's role in procuring the "agreed" order in PG-99-556 on May 9, 2000, TCO waited in the wings until after that order had been entered in the guardianship proceeding before any attorney formally entered his appearance as "Attorney for The Trust Company of Oklahoma" in PT-2000-21. This was done on May 10, 2000, when the First Amended Petition was filed.

(2001) (when power to act is controlled by statute, court only has subject matter jurisdiction accorded by statute; any action that exceeds court's jurisdiction is void); *Troxel v. Troxel,* 737 N.E.2d 745, 749 (Ind. 2000) (when court lacks subject matter jurisdiction, its actions are void *ab initio* and have no effect whatsoever)..

## PROPOSITION II.

**If a plaintiff lacks standing when a case is filed, no post-filing event or amended pleading can cure that subject matter jurisdiction defect.**

Subject matter jurisdiction is invoked by pleadings filed with the court. *In re A.N.O. v. Ogle,* 2004 OK 33, ¶ 9, 91 P.3d 646, 649. Likewise, standing, as a jurisdictional doctrine, focuses on the party seeking to get his complaint before the court, *Democratic Party of Oklahoma v. Estep,* 1982 OK 106, ¶ 7, 652 P.2d 271, 274, and *"must exist at the commencement of the litigation."* *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.,* 528 U.S. 167, 1889, 120 S.Ct 693, 709, 145 L.Ed.2d 610 (2000) (emphasis added).

*"The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."* *Minneapolis & St. L. R. Co. v. Peoria & P.U. Ry. Co,* 270 U.S. 580, 586, 46 S.Ct. 402, 405, 70 L.Ed. 743 (1926) (Cardozo, J.) (emphasis added). Therefore, a defect in subject matter jurisdiction or standing cannot be cured by post-filing events, such as "reissuance of process, passage of time, or pleading amendment." *See, e.g., Morrison v. Bestler,* 239 Va. 166, 170, 387 S.E.2d 753, 755-56 (1990); *Steger v, Franco, Inc.,* 228 F.3d 889, 893 (8th Cir. 2000; *Kane v. Forest Serv. of U.S.,* 205 F.3d 1034, 1037 (8th Cir. 2000); *Buttram v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 781 F.Supp. 1429, 1431 (E.D. Mo. 1992) (absent subject matter jurisdiction, court lacked authority to grant motion for leave to amend complaint to create jurisdiction); *Roe v. Wert,* 706 F.Supp. 788, 794 (W.D. Okla. 1989) (same).

When Saffa filed PT-2000-21, there was no dispute about his status and that of TCO *vis-a-vis* the LTW Revocable Trust. Allegations in the petition Saffa filed in PT-2000-21 acknowledge receipt of the Instrument Altering Trust which not only ***"removed"*** Saffa and TCO as co-trustees of Mrs. Wallace's Revocable Trust, but also ***added*** appellant Stephen P. Wallace, his sister Mary Roma Wallace Jage, and Bank One as "Successor Co-Trustees."

Although Saffa argued, in papers Poe, not Milton and Poe, filed in PT-2000-21 on April 24, 2000, that the Instrument Altering Trust was not "automatically and instantly effective as a modification of the Trust" [Response to Motion at 1, Writ Apx., p. 82, Sup. Ct. No. 102,813], both ***former trustees*** studiously avoided litigating the "standing" issue in PT-2000-21 or the issue of Mrs. Wallace's alleged "incapacity" in PG-99-556.

What Saffa and TCO did, instead, was procure an "agreed" Order in the guardianship proceeding by fraud.[18] The "agreed" finding in that Order, which ***purportedly*** nullified the Instrument Altering Trust, although not by name [Order, pp. 3-4, PG-1999-556, Sealed Writ Apx., pp. 98-99, Sup. Ct. No. 102,813], was used to procure an "agreed" Order in PT-2000-21 on May 10, 2000, and a Journal Entry of Final Judgment in that case on March 25, 2002, each of which declares that Saffa and TCO are trustees of Mrs. Wallace's trusts. [Order, ¶¶ 1-3, PT-2000-21, Writ Apx., p. 18, Sup. Ct. No. 102,813; Journal Entry, ¶¶ 1-3, PT-2000-21, Writ Apx., pp. 123-124, Sup. Ct. No. 102,813].

---

[18] Saffa and TCO's failure to contest assertions that Saffa and Milton told Ms. Jage that she "would not be appointed limited guardian of the person of [her] mother, unless [she] signed a document which stated that any and all documents that [her] mother had signed between December 13, 1999 and May 9, 2000, that pertained to her trust were 'void'" [Jage Aff. ¶ 5, Juris. Motion, Apx., p. 55a, Appeal No. 102,346], constitutes a tacit admission since it would have been natural, under the circumstances, to object if the quoted assertions were not true. *See United States v. Hale,* 422 U.S. 171, 176 (1975); *United States v. Adams,* 470 F.2d 249, 251 (10th Cir. 1972) (declaration of one defendant made in another's presence, under circumstances warranting inference that other defendant would naturally have contradicted it if he did not assent, is admissible on theory that it is an admission against interest of silent party); 12 Okla.Stat. § 2801(4)(b)(2) (statement is not hearsay if it is offered against a party and is a statement of which party has manifested an adoption or belief in its truth).

## PROPOSITION III.

### Because Saffa and TCO's standing in PT-2002-56 is based on the void judgment in PT-2000-21, orders entered in PT-2002-56 are also void.

Because the trial court lacked subject matter jurisdiction over PT-2000-21, the Journal Entry of Final Judgment in PT-2000-21 entered in that case on March 25, 2002 is a void judgments and, as such, is no judgment at all. PT-2002-56, the pending action involving Mrs. Wallace's trusts, as a subsequent proceeding based upon a void judgment, is also void. *See Morrison v. Bestler,* 239 Va. 166, 170, 287 S.E.2d 753, 755-56 (1990) (a judgment on the merits made without subject matter jurisdiction is null and void; any subsequent proceeding based on such a judgment is void or a nullity); *accord, Valley Vista Dev. Corp. v. City of Broken Arrow,* 1988 OK 140, ¶ 10, 766 P.2d 344, 348 (where judgments are void, any subsequent proceedings based upon the void judgment are themselves void); *LeClair v. Calls Him,* 1925 OK 134, 28, 233 P. 1087, where the Oklahoma Supreme Court held:

> *A void judgment is, in legal effect, no judgment at all. By it no rights are divested; from it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are necessarily equally worthless, and have no effect whatever upon the parties or matters in question. A void judgment neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are absolutely void. The parties attempting to enforce it are trespassers.*

*Id.* at ¶ 28, 233 P. at 1091 (citation and quotation marks omitted) (emphasis added).

The principle enunciated in the preceding paragraph in general terms is equally applicable to contempt proceedings. Because the filing of PT-2000-21 by one of two former co-trustees of the LTW Revocable Trust is *"a nullity"* under Oklahoma law, well-settled trust principles, and section 7.08 of the trust instrument and because Saffa and TCO, as *former co-trustees,* lacked "standing" to invoke the district court's subject matter jurisdiction, the Judgment and Sentence for Indirect Contempt of Court entered in PT-2002-56 on November 23, 2004, is also *"a nullity." See, e.g., In re Driggs,* 1958 OK 107, 325 P.2d 72, where the Court held:

> Every exercise of the power to punish a violation of a judicial order is, however, subject to one important qualification, namely, it is absolutely essential that the court making the order should have acted directly within its jurisdictional limites, otherwise the dis-obedience of such an order will be not contempt. In the absence of jurisdiction, the

judgment is a nullity, and if the punishment be by imprisonment the contemnor will be released on the hearing of a writ of habeas corpus.

325 P.2d at 77 (syllabus 1); *accord, Fields v. Driesel,* 1997 OK CR 33, 941 P.2d 1000, 1003; *Pate v. State,* 1967 OK CR 100, 429 P.2d 542, 546.

## PROPOSITION IV.

### The Judgment and Sentence for Indirect Contempt of Court imposed against Stephen P. Wallace is void on its face.

The Judgment and Sentence for Indirect Contempt of Court, entered by the district court on November 23, 2004, does not comply with express provisions of 21 Okla.Stat. § 568; therefore, it is void on its face. *See Burris v. Hunt,* 1998 OK CIV APP 125, 965 P.2d 1003.

The issue before the *Burris* court was whether the minute order purporting to sentence the alleged contemnor to six months in the county jail complied with the controlling statutory and case law. In holding that the Order in that case was void, the Court made the following observations:

> The problem with the June 9 minute order, either read alone or in conjunction with the June 5 minute order, is that it does not comply with 21 O.S. 1991 § 568. This statute provides: ***"Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court."*** The supreme court long ago stated : "[T]he order of confinement must set forth the facts constituting the contempt, and that it is void unless it shows on its face facts sufficient to constitute a legal contempt; mere conclusions being insufficient." *Ex parte Hibler,* 139 Okla. 157, 281 P. 144, 146 (1929). ***Where the record fails to show compliance with section 568, the judgment, sentence and order of commitment are void.*** *Hampton v. Hampton,* 1980 OK 46, ¶ 2, 609 P.2d 772, 773.

965 P.2d at 1005 (emphasis added).

Given that the Judgment and Sentence for Indirect Contempt of Court which is the subject of this appeal does not comply with express provisions of 21 Okla.Stat. § 568 or controlling precedent, but simply incorporates the substance of Wallace's alleged offense by reference, that judgment should be reversed and Wallace discharged. *See, e.g., Busby v. State ex rel. LaFon,* 1969 OK CR 13, 449 P.2d 718 (where order of confinement for direct contempt did not set forth with particularity th facts

19

constituting the direct contempt, judgment and sentence for contempt would be reversed; person penalized for contempt will be entitled to discharge if judgment imposing confinement does not disclose necessary facts upon which such judgment can rest).

## PROPOSITION V.

**Since the Order on which the Citation for Indirect Contempt of Court is based violated Wallace's constitutionally-protected right of "access to the courts," it is not a "lawful order" within the meaning of 21 Okla.Stat. § 565.**

In order for conduct to fall within the statutory definition of "indirect contempts of court," there must be *"willful disobedience* of any process or order lawfully issued by court." 21 Okla.Stat. § 565 (emphasis added). Although Wallace repeatedly asked the district court and opposing counsel for legal authority that would warrant the Tulsa County District Court's enjoining him from filing trust-related claims in any other court, no such authority was ever cited. [Tr., Vol. I, p. 221, lines 1-25].

Federal courts that are contemplating entering an order imposing filing restrictions on litigants recognize that such orders must be narrowly drawn. *See, e.g., Sires v. Gabriel,* 748 F.2d 49, 52 (1st Cir. 1984) ("where access to the courts is concerned, an injunction should be drawn as narrowly as possible"). No such restraint can be found in the TRO Wallace is alleged to have violated. Indeed, it is difficult to imagine an Order that could be more broadly drawn than the TRO that was drafted by Saffa's attorney.and signed by Judge Frizzell.

The terms of the TRO Wallace has been convicted of violating disregard provisions of the Oklahoma and Federal Constitution which recognize everyman's right to seek access to the courts. *See* Okla.Const. art. II, § 6;[19] U.S. Const. art. IV; U.S. Const., amend. I, V, and XI.

---

[19] This "access to justice" clause, also referred to as "the Right to a Remedy" clause, had its origins in the Magna Carta and is incorporated in the constitutions of thirty-eight other states. *See* Leonard W. Schroeter, *The Jurisprudence of Access to Justice: From Magna Carter to Romer v. Evans via Marbury v. Madison,* Washington State Access to Justice Bd. web site, Seattle, Wash. (http:/www.waaccesstojustice.org/committees/jurisassets/jurisassets/jurispubs/jurisatj).

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich,* 340 F.3d 1279, 1282 (11ᵗʰ Cir. 2003) (citing *Christoopher v. Harbury,* 536 U.S. 403, n.12 (2002)); *see also Bill Johnson's Rets., Inc. v. NLRB,* 461 U.S. 479, 484 (1985) (the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances); *Snyder v. Nolen.* 380 F.3d 279, 291-82 (7ᵗʰ Cir. 2004) (the right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process).

Because of its overbreadth and the trial court's lack of subject matter jurisdiciton, Wallace respectfully submits that the TRO he is alleged to have disobeyed is not "an order lawfully issued" within the meaning of 21 Okla.Stat. § 565.

### PROPOSITION VI.

**There is no evidence in the record that would support a finding that Wallace's alleged disobedience of the TRO was "willful" within the meaning of 21 Okla. Stat. § 565.**

For a jury to have properly found that Wallace was guilty of indirect contempt of court, there had to be evidence that he knew of the TRO and its terms *before* he filed his civil rights action in Washington, D.C. on April 30, 2004. ***"The requirement of willfulness contemplates knowledge that one is violating a court order."*** *See, e.g, United States v. Mourad,* 289 F.3d 174, 180 (1ˢᵗ Cir.) (emphasis added), *cert. denied,* 537 U.S. 933 (2002). Willfulness is a "volitional act" committed with knowledge or awareness that it is wrong. *United States v. Themy-Kotronakis,* 140 F.3d 858, 864 (10ᵗʰ Cir. 1998).

In this case, there is no evidence, much less evidence beyond a reasonable doubt, that would support the jury's verdict that Wallace was guilty of indirect contempt of court. *Cf. United States v. Michaud,* 928 F.2d 13, 15 (1ˢᵗ Cir. 1991) (to convict a defendant of criminal contempt under 18 U.S.C.

§ 401(3), the government must prove beyond a reasonable doubt that the defendant willfully violated

a lawful order of reasonable specificity).  As complainants and real parties in interest, Saffa and TCO

had the burden of proving the material allegations of their contempt petition unless Wallace admitted

having violated the TRO issued on April 21, 2004.  *See Morgan v. National Bank of Commerce of*

*Shawnee,* 1923 OK 230, 217, 388, *overruled on other gnds by Henry v. Schmidt,* 2004 OK 34, ¶ 16,

91 P.3d 651, 655.  TCO and Saffa clearly failed to carry this burden, particularly as it relates to the

"willfulness" element of the criminal charges lodged against appellant Stephen P. Wallace.

## PROPOSITION VII

### The provision in the Judgment for Indirect Contempt of Court that would require Wallace to submit to a mental health examination or treatment in lieu of spending 39 days in jail is contrary to Oklahoma law.

The only situation in which an Oklahoma court can compel a person to submit to a psychiatric

examination is when it is considering the entry of an Emergency Order of Detention.  *See* 43A

Okla.Stat. §§ 5-207 - 5-209.  Including a provision in the Judgment and Sentence for Indirect Contempt

of Court allowing Wallace to chose between undergoing a mental health examination and spending 39

days in jail in contrary to Oklahoma law and clearly against the public policy of this State.

Nothing in the record in PT-2002-56 suggests, much less establishes, that the district court

considered the statute cited above or limitations imposed on his authority by its terms to include the

provision in the Judgment of Contempt which gave Wallace the option of undergoing a mental health

examination and submitting to treatment in lieu of spending 39 days of the 60 day sentence in jail.

## PROPOSITION VIII

### The district court violated Wallace's right to assistance of counsel guaranteed by the Sixth Amendment of the Federal Constitution.

When an Oklahoma district court imposes penal sanctions in an indirect contempt proceeding,

the alleged contemnor is entitled to federal constitutional protections.  *Henry v. Schmidt,* 2004 OK 34,

¶¶ 18, 19, 21, 91 P.3d 651, 655, 656.  The Court in *Henry v. Schmidt* specifically recognized the

alleged contemnor's right to trial by jury and a heightened burden of proof, i.e., beyond a reasonable doubt, not simply clear and convincing evidence. *Id.* In commenting on the right to a jury trial in an indirect contempt proceeding, the Court noted that "a defendant may waive his constitutional right to a jury trial only upon 'a clear showing that such waiver was competently, knowingly and intelligently given.'" It added that '[a] record showing an intelligent, competent and knowing waiver of a fundamental right is mandatory.'" 2004 OK 34, ¶ 19, 91 P.3d at 655

The record in this case does not show "an intelligent, competent and knowing of waiver of [the] fundamental right [of assistance of counsel guaranteed by the Sixth Amendment]." What the record does show is Wallace's specific request for a continuance, upon learning that the district judge had withdrawn his offer to dismiss the contempt charge against him, so he could secure the assistance of counsel and the trial court's denial of both requests.

By its terms, the Sixth Amendment, which is made applicable to the States by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." *See, e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In commenting upon this constitutional guarantee, the court in *United States v. McCutcheon,* 86 F.3d 187 (11th Cir. 1996), made the following observations:

> This constitutional guarantee of counsel has been construed to include four rights: the right to counsel, *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the right to effective assistance of counsel, the right to a preparation period sufficient to ensure a minimal level of quality of counsel, and the right to be represented by counsel of one's own choice. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942).

86 F.3d at 189.

Given the record before this Court, it is clear that the district court violated Wallace's Sixth Amendment right to "Assistance of Counsel."

## CONCLUSION

For the reasons set forth above, respondent-appellant Stephen P. Wallace prays for an Order dismissing PT-2002-56 for lack of subject matter jurisdiction. Assuming *arguendo* that the district

23

court has jurisdiction over PT-2002-56, Wallace submits that the Court should enter an Order reversing the Judgment and Sentence for Indirect Contempt of Court, discharging him from any further prosecution on the same charge, and granting him such further relief as may be appropriate.

Respectfully submitted,

Joan Godlove, OBA No. 10563
2121 South Columbia, Suite 500
Tulsa, Oklahoma 74114-3519
Telephone: (918) 744-0201

Attorney for Respondent-Appellant

## CERTIFICATE OF MAILING TO PARTIES

I certify that on this 30th day of December, 2005, true and correct copies of Appellant's Brief in Chief were deposited in the United States mail, first class postage prepaid, addressed to James C. Milton, 320 S. Boston Avenue, Suite 500, Tulsa, Oklahoma 74103-3725; James E. Poe, 111 West 5th Street, Suite 740, Tulsa, Oklahoma 74103; and the Tulsa County Court Clerk, Tulsa County Courthouse, 500 South Denver Avenue, Tulsa, Oklahoma 74103.

Joan Godlove