# Exhibit "L"

# Appellees' Answer Brief dated February 8, 2006, filed in Supreme Court Case No. 101,511

No. 101511

---

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

---

In re: the Lorice T. Wallace Revocable Trust dated December 26, 1974, as restated
effective October 5, 2993 and as amended on February 12, 1998, the Lorice T. Wallace
Irrevocable Trust dated February 8, 1996, the Lorice T. Wallace Irrevocable Trust
dated September 11, 1992, also known as the Lorice T. Wallace Life Insurance Trust,
and the Lisa Frances Wallace Discretionary Spendthrift Trust.

STEPHEN P. WALLACE,

Respondent/Appellant,

v.

RONALD J. SAFFA AND THE TRUST COMPANY OF OKLAHOMA,

Petitioners/Appellees.

---

APPELLEES' ANSWER BRIEF

---

Appeal from Tulsa County District Court
Case No. PT-2002-56
Honorable Gregory K. Frizzell

Contempt proceedings within action for instructions
pursuant to Okla. Stat. tit. 60, §175.23

---

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

Jon E. Brightmire, OBA No. 11623
320 South Boston Ave., Ste. 500
Tulsa, Oklahoma 74103-3725
918-582-1211; fax 918-591-5398

ATTORNEYS FOR APPELLEE,
THE TRUST COMPANY OF OKLAHOMA

Joined by:      James E. Poe, OBA No. 7198
COVINGTON & POE
111 West 5th Street, Ste. 740
Tulsa, Oklahoma 74103
918-585-5537; fax 585-5530

ATTORNEY FOR APPELLEE,
RONALD J. SAFFA

February 8, 2006

# TABLE OF CONTENTS

Summary of the Record.................................................................................... 1

Argument and Authorities................................................................................ 5

1.    The issues of standing and subject-matter
    jurisdiction are not properly before the Court on appeal. ........................ 5

    *Frey v. Independence Fire & Cas. Co.,*
    1985 OK 25, 698 P.2d 17 ........................................................................ 6

    *State ex rel. Dept. of Human Servs. v. Routt,*
    2001 OK CIV APP 113, 30 P.3d 1180...................................................... 7

    Okla. Sup. Ct. R. 1.200(b)(5) ................................................................. 6

2.    Alternatively, in the current appeal, Mr. Wallace
    has failed to present a sufficient record to overcome
    the presumption that the appealed-from order is a valid
    exercise of the trial court's jurisdiction................................................... 7

    *Booth v. McKnight,*
    2003 OK 49, 70 P.3d 855 ........................................................................ 9

    *Eckel v. Adair,*
    1984 OK 86, 698 P.2d 921 ...................................................................... 8

    *Florafax Int'l, Inc. v. GTE Market Resources, Inc.,*
    1997 OK 7, 933 P.2d 282 ........................................................................ 8

    *Frey v. Independence Fire & Cas. Co.,*
    1985 OK 25, 698 P.2d 17 ........................................................................ 7

    *Halliburton v. Internal Revenue Serv.,*
    1998 OK 110, 981 P.2d 1244.............................................................. 8, 9

    *Pryor v. Mid-West Investigations & Process Serving, Inc.,*
    2000 OK CIV APP 22, 999 P.2d 452...................................................... 8

3.    Mr. Wallace relies on documents that are not part of
    the record on appeal. ............................................................................. 9

    *Independent School Dist. No. I-20 v. Okla. Stat. Dept. of Educ.,*
    2003 OK 18, 65 P.3d 612 ...................................................................... 10

4.   Many of the documents designated by Mr. Wallace
     for inclusion in the record on appeal were not before
     the trial court at the time of the November 23, 2004
     Judgment and Sentence. .................................................................... 10

     *Frey v. Independence Fire & Cas. Co.,*
     1985 OK 25, 698 P.2d 17 ............................................................ 10, 11

     Okla. Sup. Ct. R. 1.33(d) ................................................................ 11

5.   Many of the factual statements by Mr. Wallace in his
     December 30, 2005 Brief in Chief are unsupported by
     citations to the record on appeal. .......................................................... 11

     *Henry v. Schmidt,*
     2004 OK 34, 91 P.3d 651 ................................................................. 11

     *Matter of Rich,* 1979 OK 173, 604 P.2d 1248 ........................................ 12

     Okla. Sup. Ct. R. 1.11(e)(1) ......................................................... 11, 12

6.   This appeal should be dismissed because Mr. Wallace
     failed to ensure timely completion of the record on appeal. ................................ 12

     Okla. Sup. Ct. R. 1.2 ...................................................................... 13

     Okla. Sup. Ct. R. 1.34(g) ............................................................. 12, 13

7.   Mr. Wallace's challenge against the facial validity of
     the November 23, 2004 Judgment and Sentence is
     unsupported by the record on appeal. ................................................... 13

     *Busby v. State,* 1969 OK CR 13, 449 P.2d 718 .................................... 15

     *Ex parte Hibler,*
     1929 OK 401, 281 P. 144 ............................................................... 14

     *Ex parte Murray,*
     1923 OK CR, 54 Okl. Cr. 437, 23 P.2d 220 ........................................ 15

     *Myers v. Maxey,*
     1995 OK CIV APP 148 ................................................................... 14

     Okla. Stat. tit. 21, § 568 ........................................................... 13, 15

8.      Mr. Wallace failed to preserve for appeal any and all
        issues regarding the validity of the temporary
        restraining order that he violated.................................................................. 16

        *Frey v. Independence Fire & Cas. Co.*,
        1985 OK 25, 698 P.2d 17 .................................................................... 16

        Okla. Stat. tit. 21, § 565 ..................................................................... 16

9.      Mr. Wallace cannot use an appeal from a contempt
        conviction to challenge the validity of the injunction
        that he violated. ................................................................................. 16

        *Brown v. State*, 1949 OK CR, 89 Okl. Cr. 443, 209 P.2d 715 ............................... 16

        *Whillock v. Whillock*, 1976 OK 51, 550 P.2d 558 .................................................. 17

10.     The temporary restraining order is valid. ............................................................. 17

        *Board of County Commissioners v. Winslow*,
        706 P.2d 792 (Colo. 1985) ................................................................... 17

        *Davis v. District Court*,
        1928 OK 33, 264 P. 176 ...................................................... 17, 18, 19

        *In re Enron Corp. Securities Litig.*,
        391 F. Supp. 2d 541 (S.D. Tex. 2005) ................................................... 19

        *Firelock, Inc. v. District Court*,
        776 P.2d 1090 (Colo. 1989) ................................................................... 17

        *Haggard v. Calhoun*, 1956 OK 62, 294 P.2d 836 ........................................... 17, 19

        *Huber v. Franklin County Community School Corp.*,
        507 N.E.2d 233 (Ind. 1987) .................................................................. 17

        *Werner v. Utah*, 32 F.3d 1446 (10th Cir. 1994) .................................................. 17

        Okla. Stat. tit. 60, § 175.23 .................................................................. 18, 19

11.   Mr. Wallace is unable to meet the requirements for
      reversal of a jury verdict for "insufficient evidence." ........................................... 19

      *Davidson v. Gregory*, 1989 OK 87, 780 P.2d 679 ................................................. 20

      *First Federal Sav. & Loan Assn. v. Nath*,
      1992 OK 129, 839 P.2d 1336 ............................................................................ 19-20

      *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*,
      1997 OK 7, 933 P.2d 282 ....................................................................................... 20

      *Hames v. Anderson*, 571 P.2d 831 (Okla. 1977) ................................................... 20

      *Matter of Rich*, 1979 OK 173, 604 P.2d 1248 ...................................................... 20

      *Park v. Security Bank & Trust Co.*, 512 P.2d 113 (Okla. 1973) .......................... 20

      *Pryor v. Mid-West Investigations & Process Serving, Inc.*,
      2000 OK CIV APP 22, 999 P.2d 452 ...................................................................... 19

      *Vuitton et Fils, S.A. v. Carousel Handbags*,
      592 F.2d 126 (2d Cir. 1979) .................................................................................... 21

      Okla. Stat. tit. 12, § 1387 ......................................................................................... 21

      Okla. Stat. tit. 12, § 1388 ......................................................................................... 21

12.   The mental-health provisions of the Judgment and
      Sentence are reasonable and appropriate conditions
      upon a deferred sentence. ......................................................................................... 22

      *Peters v. Golden Oil Co.*,
      1979 OK 123, 600 P.2d 330 ..................................................................................... 22

      Okla. Stat. tit. 22, § 991a(A)(1)(p) .......................................................................... 22

13.    Mr. Wallace's arguments regarding assistance of
       counsel are erroneous and unsupported by the record
       on appeal. ..................................................................................................23

       *Eady v. State*, 695 So. 2d 752 (Fla. Dist. Ct. App. 1st Dist. 1997) ......................26

       *Faretta v. California*, 422 U.S. 806 (1975)............................................................26

       *Faulkner v. State*, 1982 OK CR 84, 646 P.2d 1304 ...............................................27

       *Johnson v. State*, 1976 OK CR 292, 556 P.2d 1285 ..............................................28

       *McKaskle v. Wiggins*, 465 U.S. 168 (1984) ............................................................26

       *Parker v. State*, 1976 OK CR 293, 556 P.2d 1298................................................27

       *Peters v. Golden Oil Co.*, 1979 OK 123, 600 P.2d 330 .........................................26

       *Stiner v. State*, 1975 OK CR 156, 539 P.2d 750 ...................................................27

       *United States v. Daniels*, 572 F.2d 535 (5th Cir. 1978) .........................................27

       *United States v. Webster*, 84 F.3d 1056 (8th Cir. 1996) ........................................26

       28 U.S.C. § 1654 ......................................................................................................27

       Rule 29, Rules for District Courts ...........................................................................23

       21A Am. Jr. 2d Criminal Law § 1248 .....................................................................26

Conclusion........................................................................................................................30

## SUMMARY OF THE RECORD

On March 26, 2004, after years of expensive and wasteful litigation initiated by Appellant Stephen Paul Wallace, the Appellees, The Trust Company of Oklahoma and Ronald J. Saffa, filed a Motion for Temporary Restraining Order, Preliminary and Permanent Injunction and Request for Expedited Hearing. [R. 922, Motion for TRO.] The March 26, 2004 Motion showed the trial court that Mr. Wallace had "filed many different civil cases in many different Courts, as well as appeals of many rulings adverse to him as the record in various cases reflects. These cases have been filed in State Courts in Oklahoma, Illinios, Indiana and Missouri and Federal District and Bankruptcy Courts in the Northern and Western Districts of Oklahoma. . . . In the Lawsuits, Stephen has accused Saffa and TCO of engaging in actual fraud, fraud upon various Courts, including this Court, theft, criminal and civil conspiracy (including alleged conspiracies involving participation by many of the Judges who have ruled against Stephen), manipulation of State and Federal Judges, including appellate court justices, perjury, illegal acts to obtain and administer psychotropic drugs to Lorice Wallace (the Debtor's mother and the settlor of the Trusts), bribery, acts constituting civil and criminal RICO violations and various other intentional torts against Stephen and his family . . . . There have been multiple opportunities for Stephen to appear at various hearings and trials to produce evidence or other proof of the Wrongful Allegations, but in each instance he never once presented anything to substantiate his outrageous claims." [R. 922, Motion for TRO, at pp. 2, 3.]

The March 26, 2004 Motion showed the trial court that "[e]xisting remedies have proven to be ineffective in putting a stop to Stephen's litigation activities and the continuing damages resulting from Stephen's actions . . . ." [R. 922, Motion for TRO, at p. 9.] The March 26, 2005 Motion showed the Court that, "[g]iven the demonstrated history of Stephen's litigation crusade against the Trustees and the Trusts, unless this Court grants this type of injunctive relief, there is

no reason to believe that Stephen will not merely file another suit . . . ." [R. 922, Motion for TRO, at p. 10.] On these bases, Trust Company and Mr. Saffa requested temporary and permanent injunctive relief "enjoining Stephen, either individually or any other purported pro se representative capacity on behalf of any other entity or natural person, from ever filing any more lawsuits in any Court except this Court based on any acts, events, transactions or circumstances that occurred after the Release Date or commencing any other legal proceeding of any kind in any other Court concerning the Trusts or the Trustees in any capacity . . . ." [R. 922, Motion for TRO, at p. 12.]

Mr. Wallace was served with the March 26, 2004 Motion in the manner required by Okla. Stat. tit. 12, § 2005. [R. 922, Motion for TRO, at p. 14; R. 1783, Petitioners' Ex. "6", at p. 14.] Mr. Wallace was also served with a Notice of Application for Temporary Restraining Order, notifying him that the March 26, 2004 Motion would be heard by the trial court on April 2, 2004, at 1:30 p.m. [R. 923, Notice, at pp. 1, 2; R. 1783, Petitioners' Ex. "7", at pp. 1, 2.] Mr. Wallace appeared at the hearing on April 2, 2004. [R. 1017, TRO, at p. 1; R. 1833, 4/2/2004 Tr., at p. 1; R. 938, 4/5/2004 Order; R. 1783, Petitioners' Ex. "8".] The hearing was continued to April 16, 2004, at 1:30 p.m. [R. 1017, TRO, at p. 1; R. 1833, 4/2/2004 Tr., at p. 132, ll. 16-24; R. 938, 4/5/2004 Order; R. 1783, Petitioners' Ex. "8".] Mr. Wallace was aware of the continued date and time. [R. 1833, 4/2/2004 Tr., at p. 134, l. 12 through p. 135, l. 5; R. 938, 4/5/2004 Order; R. 1783, Petitioners' Ex. "8".] Mr. Wallace failed to appear at the hearing held on April 16, 2004. [R. 1017, TRO, at p. 2; R. 1834, 4/16/2004 Tr., at p. 2, ll. 12-17; R. 1783, Petitioners' Ex. "9"; R. 1783, Petitioners' Ex. "10".] During the April 16, 2004 hearing, the trial court entered findings regarding its subject-matter jurisdiction and the trial court's jurisdiction over the person of Stephen Paul Wallace. [R. 1017, TRO, at p. 2; R. 1834, 4/16/2004 Tr., at p. 35, l. 7 through p. 36, l. 22; R. 1783, Petitioners' Ex. "10", at p. 2.]

2

During the April 26, 2004 hearing, the trial court found extraordinary circumstances and unprecedented actions by Mr. Wallace, warranting the extraordinary relief sought by Trust Company and Mr. Saffa with the March 26, 2004 Motion. [R. 1017, TRO, at p. 3; R. 1834, 4/16/2004 Tr., at p. 35, l. 7 through p. 36, l. 22; R. 1783, Petitioners' Ex. "10", at p. 3.] On these bases, the trial court entered its Temporary Restraining Order and Notice of Opportunity for Show Cause Hearing on April 21, 2004. [R. 1017, TRO; R. 1783, Petitioners' Ex. "10".] The April 21, 2004 Temporary Restraining Order enjoined "Stephen P. Wallace, individually or in any other purported pro se or representative capacity on behalf of any other person or entity . . . from filing lawsuits or commencing legal proceedings of any kind, in any court or jurisdiction except this Court, based upon any allegations of acts, events, transactions or circumstances in any manner related to or concerning the Trusts or the Trustees, in any capacity." [R. 1017, TRO, at pp. 4-5; R. 1783, Petitioners' Ex. "10", at pp. 4-5.] The April 21, 2004 Temporary Restraining Order set a hearing for May 26, 2004, at 1:30 p.m., to determine "whether [the] temporary restraining order shall be made a preliminary injunction and thereafter continued in force and effect as a preliminary injunction or permanent injunction." [R. 1017, TRO, at p. 5; R. 1783, Petitioners' Ex. "10", at p. 5.]

The April 21, 2004 Temporary Restraining Order was served on Mr. Wallace by mail, in the manner provided by Okla. Stat. tit. 12, § 2005. [R. 1023, Affidavit of Service; R. 1783, Petitioners' Ex. "11".] On April 30, 2004, in violation of the April 21, 2004 Temporary Restraining Order, Mr. Wallace initiated a new action in federal court in Washington, D.C., against Trust Company and Mr. Saffa, as well as over one hundred other persons. [R. 1034, Application, at pp. 5-18 (Exhibit "A").]

Mr. Wallace failed to appear at the hearing on May 26, 2004. [R. 1052, 5/27/2004 Order, at p. 1.] The trial court entered an order continuing the temporary restraining order as a temporary injunction. [R. 1052, 5/27/2004 Order, at pp. 1-3.]

On May 27, 2004, Trust Company and Mr. Saffa filed an Application for Citation of Contempt, notifying the trial court of Mr. Wallace's willful disobedience of the April 21, 2004 Temporary Restraining Order through his action in filing the April 30, 2004 new action in federal court in Washington, D.C. [R. 1034, Application, at pp. 1-4.] On May 27, 2004, the trial court entered its Order for Citation for Contempt, requiring Mr. Wallace to appear on July 22, 2004 at 9:45 a.m. to show cause why he should not be punished for contempt of court. [R. 1055, Order for Citation, at pp. 1-2.] Mr. Wallace was served with the Order for Citation for Contempt by delivery to his private post-office box on May 27, 2004. [R. 1075, Sheriff Return; R. 1098, Emergency Application, at p. 3.] After Mr. Wallace complained about the method of service of the Order for Citation for Contempt, [R. 1098, Emergency Application, at p. 3], he was served again with the Order for Citation for Contempt by personal service on July 19, 2004. [R. 1160, Affidavit of Service.]

On July 22, 2004, Mr. Wallace appeared in person for the show-cause hearing on the Order for Citation for Contempt. [R. 1165, 7/22/2004 Order.] Mr. Wallace entered a "not guilty" plea and requested a jury trial. [R. 1165, 7/22/2004 Order.] The trial court set a jury trial for September 9, 2004, beginning at 9:30 a.m. [R. 1165, 7/22/2004 Order.]

On August 16, 2004, Mr. Wallace filed an emergency application for pretrial order, suggesting that he desired to "prepare and issue summons, subpoenas, interrogatories, etc., for the jury trial scheduled for September 9, 2004." [R. 1228, 8/16/2004 Emergency Motion.] On August 27, 2004, Mr. Wallace filed an emergency motion seeking the issuance of subpoenas and seeking a continuance of the September 9, 2004 trial setting. [R. 1266, 8/27/2004

4

Emergency Motion.]  On August 27, 2004, the trial court entered an order setting a pretrial conference for September 2, 2004, at 10:00 a.m.  [R. 1268, 8/27/2004 Notice of Hearing.]  The pretrial conference was held on September 2, 2004.  [R. 1273, 9/2/2004 Pretrial Order, at pp. 1-4.]  During the pretrial conference, the trial court denied Mr. Wallace's request for the issuance of subpoenas and denied Mr. Wallace's request for a continuance.  [R. 1277, 9/2/2004 Order.]  The trial court entered a pretrial conference order, [R. 1277, 9/2/2004 Order], signed by counsel for Trust Company and Mr. Saffa, and signed by Mr. Wallace with a notation "under duress."  [R. 1273, 9/2/2004 Pretrial Order, at p. 4.]  The pretrial conference order outlines the factual allegations by Trust Company and Mr. Saffa supporting their request for citation of contempt of court.  [R. 1273, 9/2/2004 Pretrial Order, at pp. 1-2.]

On September 3, 2004, Mr. Wallace filed an application for writ of prohibition in Oklahoma Supreme Court Case No. 101158.  In Case No. 101158, Mr. Wallace raised the issue of assistance of counsel.  On September 7, 2004, the Supreme Court's referee conducted an adversary presentation by the parties.  The Supreme Court entered an order denying all emergency relief.  Later, on October 19, 2004, the Supreme Court entered an order denying original jurisdiction.

At jury trial, Mr. Wallace was convicted of indirect contempt of court.  [R. 1371, Verdict Form.]  Mr. Wallace was later sentenced to a fine and jail time.  [R. 1471, Judgment and Sentence.]

## ARGUMENT AND AUTHORITIES

**1.    The issues of standing and subject-matter jurisdiction are not properly before the Court on appeal.**

Much of the December 30, 2005 Brief in Chief addresses the issues of standing and subject-matter jurisdiction.  On January 17, 2006, the Oklahoma Supreme Court denied an application to assume original jurisdiction raising these same issues.  [*Stephen P. Wallace v.*

5

*Hon. Gregory K. Frizzell*, Case No. 102813, 1/17/2006 Order.[1]]  On the same date, the

Oklahoma Supreme Court entered an Order rejecting Mr. Wallace's effort to inject these issues

into an appeal from an order approving the sale of real estate.  [*In re Lorice T. Wallace*

*Revocable Trust*, Case No. 102346, 1/17/2006 Order.[2]]  In the January 17, 2006 Order in Case

No. 102346, the Supreme Court held that the issues "are outside the scope of the issues which

are properly a part of this appeal.  This appeal is limited to the issues before the trial court when

the trial court approved the sales of certain real property . . . ." [*Id.*]  In support of this holding,

the Supreme Court cited *Frey v. Independence Fire & Cas. Co.*, 1985 OK 25, 698 P.2d 17.  In

*Frey*, the Court followed the long-standing rule that "the reviewing court is always limited to

the issues actually presented below, as reflected by the record." *Frey*, 1985 OK 25, ¶ 6, 698

P.2d at 20.  Similarly, the appellant "cannot supplement the record on appeal by injecting into it

material that was not before the trial court at the judgment stage." *Id.*, 1985 OK 25, ¶ 7, 698

P.2d at 20.

     In footnote 2 of the December 30, 2005 Brief in Chief in this appeal, Mr. Wallace admits

that he has raised the issues of standing and subject-matter jurisdiction "for the first time on

appeal." [Brief in Chief, at p. 1, n.2.]  Similarly, Mr. Wallace admits that the "facts" upon

which his jurisdictional challenge is based cannot be found in the record on appeal. [*Id.*]  Thus,

the issues of standing and subject-matter jurisdiction are before the Court in the same posture as

in Case No. 102346.  The Court should apply the reasoning of the Court's January 17, 2006

---

[1]     Trust Company and Mr. Saffa cite the referenced unpublished ruling for purposes of supporting "a claim of res judicata, collateral estoppel, or law of the case." Okla. Sup. Ct. R. 1.200(b)(5).

[2]     *See supra* note 1.

Order in Case No. 102346 and reject the standing and subject-matter jurisdiction challenges raised by Mr. Wallace for the first time on appeal.[3]

Given the Supreme Court's prior resolution of these issues, and the prior briefing by both parties on the issues of standing and subject-matter jurisdiction, there appears to be no reason to respond any further to the many factual and legal arguments on these issues, made by Mr. Wallace in his December 30, 2005 Brief in Chief. Thus, the "subject matter jurisdiction" portion of Mr. Wallace's summary of the record, appearing on pages 1 through 9 of his December 30, 2005 Brief in Chief, warrants no response from the Appellees. Similarly, Propositions I, II, and III of the argument portion of Mr. Wallace's December 30, 2005 Brief in Chief, appearing on pages 14 through 19, warrant no response from the Appellees.

Mr. Wallace has also attempted to interject the issue of subject-matter jurisdiction into other portions of his December 30, 2005 Brief in Chief. For example, in the conclusion of Proposition V, Mr. Wallace suggests that "the trial court's lack of subject matter jurisdiction" supports his argument that the temporary restraining order violated by Mr. Wallace is not "an order lawfully issued." [Brief in Chief, at p. 21.] Similarly, in the conclusion of Mr. Wallace's Brief in Chief, on page 23, Mr. Wallace again requests an order from the appellate courts, "dismissing PT-2002-56 for lack of subject matter jurisdiction." [Brief in Chief, at p. 23.] These arguments should be rejected.

**2.     Alternatively, in the current appeal, Mr. Wallace has failed to present a sufficient record to overcome the presumption that the appealed-from order is a valid exercise of the trial court's jurisdiction.**

Even if Mr. Wallace were to overcome the *Frey* rule cited by the Supreme Court in its January 17, 2006 Order in Case No. 102346, Mr. Wallace faces a very stiff standard in his

---

[3]     Even issues of a constitutional nature must be raised at the trial-court level or they are waived on appeal. *See State ex rel. Dept. of Human Servs. v. Routt*, 2001 OK CIV APP 113; ¶ 8, 30 P.3d 1180.

jurisdictional challenges against orders entered in both the underlying action and several other actions. First, the orders and judgments challenged by Mr. Wallace through this appeal are presumed to be supported by the law and the facts, unless the record on appeal shows otherwise. "The appellate court will presume that the trial court has done everything proper and necessary to have been done to support its judgment, unless the contrary affirmatively appears." *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 32 n.6, 933 P.2d 282, 294 n.6. Here, the record shows a determination by the trial court that the trial court had subject-matter jurisdiction over the action, following a hearing on the March 26, 2004 Motion for Temporary Restraining Order. [R. 1017, TRO, at p. 2, ¶ 1.] The record supports *none* of the facts urged by Mr. Wallace in his challenge against standing and subject-matter jurisdiction. As the Supreme Court has held, "[e]rror may not be presumed from a silent record. It must be affirmatively demonstrated." *Eckel v. Adair*, 1984 OK 86, 698 P.2d 921, 924. "[E]very fact not disputed by the record must be regarded as supporting the trial court's judgment." *Pryor v. Mid-West Investigations & Process Serving, Inc.*, 2000 OK CIV APP 22, ¶ 6, 999 P.2d 452, 454 (citing *First Federal Savings and Loan Association v. Nath*, 1992 OK 129, 839 P.2d 1336, 1342).

In addition, Mr. Wallace's jurisdictional challenges are dependent upon his collateral attacks against prior judgments. Mr. Wallace is challenging the validity of prior judicial acts. He has done so without presenting, in this appeal, the entire judgment roll from the prior judicial proceedings. The Oklahoma Supreme Court has held that "[f]or a showing that a judicial act lacks facial validity, an entire judgment roll must be included in the materials presented for review. . . . The duty to incorporate into the record all materials necessary to secure corrective relief is cast by law on the appellant. A reviewing court may take notice only of that record which is before it." *Halliburton v. Internal Revenue Serv.*, 1998 OK 110, ¶ 11, 981 P.2d 1244

(footnotes omitted).   Collateral attacks against judgments should not be resolved upon a critically deficient record. *Booth v. McKnight*, 2003 OK 49, ¶¶ 13-15, 70 P.3d 855.

In any event, the *Halliburton* court determined that a defect "cannot be challenged except by a timely vacation process to be launched in the [original] suit." *Halliburton*, 1998 OK 110, ¶ 12. The *Halliburton* Court held that "[t]here is in this record no paper trail of a motion to vacate any of these critical pre-garnishment dispositions for a facially fatal defect or for some other infirmity." *Id.* The same reasoning applies to Mr. Wallace's challenges against the prior judgments that resolved his various challenges against his mother's trusts and trustees.  The record on appeal contains no "paper trail of a motion to vacate" any of the prior judicial acts upon which Mr. Wallace's jurisdictional challenge focuses.

**3.    Mr. Wallace relies on documents that are not part of the record on appeal.**

Mr. Wallace's December 30, 2005 Brief in Chief relies extensively on documents that are not a part of the appellate record.  In fact, in the first eight and one-half pages of Mr. Wallace's December 30, 2005 Brief in Chief, consisting of his "summary of the record" regarding "subject matter jurisdiction," Mr. Wallace cites to the record on appeal *only once*.[4] [12/30/2005 Brief in Chief, at p. 8 (citing R. 1783).] All other citations in those eight and one-half pages are to documents that are not contained in the record on appeal.

Throughout his December 30, 2005 Brief in Chief, Mr. Wallace continues his citations to documents not contained in the record on appeal.  For example, in several portions of his December 30, 2005 Brief in Chief, Mr. Wallace cites to documents that he filed in Oklahoma Supreme Court Case No. 102346. [12/30/2005 Brief in Chief, at p. 11, n.14; *id.* at p. 14, n.15; *id.* at p. 17.]  In addition, throughout his Brief in Chief, Mr. Wallace cites extensively to a

---

[4]    Mr. Wallace's explanation is that the issues of standing and subject-matter jurisdiction are raised for the first time on appeal -- a fatal defect that is addressed by the Appellees in Section 1 of their Argument and Authorities, above.

transcript, using the abbreviations "Tr., Vol. I" and "Tr., Vol. II." [*See* 12/30/2005 Brief in Chief, at pp. 11-13, 20.] These citations appear to be citations to the trial transcript from proceedings on September 9 and 10, 2004. Mr. Wallace did not designate the trial transcript for inclusion in the record on appeal. [R. 1694, 1/11/2005 Designation of Record.] The trial transcript is not contained within the record on appeal.

"[I]t is the appealing party's responsibility to ensure that the record contains the proper documentation that they intended to be included in the record." *Independent School Dist. No. I-20 v. Okla. State Dept. of Educ.*, 2003 OK 18, n.4, 65 P.3d 612. The Court should reject all of Mr. Wallace's requests for appellate relief that rest on documents not contained in the record on appeal.

4.     **Many of the documents designated by Mr. Wallace for inclusion in the record on appeal were not before the trial court at the time of the November 23, 2004 Judgment and Sentence.**

Setting aside for a moment the fact that Mr. Wallace relies on documents not included in the record on appeal, Mr. Wallace's December 30, 2005 Brief in Chief suffers from another significant defect. Specifically, the December 30, 2005 Brief in Chief references and relies upon a number of documents that were not before the trial court at the time of the trial court's decision. Thus, even if these documents were or had been designated for inclusion in the record on appeal, the documents could not be considered in the appellate review process. As stated by the Oklahoma Supreme Court in *Frey v. Independence Fire & Cas. Co.*, 1985 OK 25, 698 P.2d 17, a litigant "cannot supplement the record on appeal by injecting into it material that was not before the trial court at the judgment stage. Neither may an appellate pronouncement serve as a means of supplying a deficiency in the record tendered for review. In short, there can be no post-decisional amendment of the record to include material that was not timely admitted or properly pressed for incorporation at the trial level." *Frey v. Independence Fire & Cas. Co.*,

1985 OK 25, ¶ 7, 698 P.2d 17, 20. *See also* Okla. Sup. Ct. R. 1.33(d) ("Only papers filed and exhibits presented to the trial court together with transcripts necessary to the appeal may be included in the record on appeal.").

As noted previously in this Answer Brief, the *Frey* Court's decision served as the basis for the Oklahoma Supreme Court's January 17, 2006 orders in Case No. 102346 and Case No. 102813, rejecting Mr. Wallace's effort to insert the issues of standing and subject-matter jurisdiction into those appeals. Here, the *Frey* Court's decision requires the exclusion from consideration of all factual arguments that are based upon documents that were not before the trial court at the time of the appealed-from November 23, 2004 Judgment and Sentence.

5.    **Many of the factual statements by Mr. Wallace in his December 30, 2005 Brief in Chief are unsupported by citations to the record on appeal.**

Throughout his December 30, 2005 Brief in Chief, Mr. Wallace makes factual assertions that are unsupported by citations to the record on appeal. For instance, on pages 12 and 13 of his Brief in Chief, Mr. Wallace describes his apparent effort to "purge" his contempt of court,[5] but fails to support this recitation with citations to the record. Mr. Wallace's only citation to the record is to a September 8, 2004 filing by Mr. Wallace, [R. 1317, 9/8/2004 Request], which fails to support Mr. Wallace's story. Rule 1.11(e)(1) of the Oklahoma Supreme Court Rules requires that "[f]acts stated in the Summary of the Record must be supported by citation to the record

---

[5]    Shortly before the trial in this contempt proceeding, the Oklahoma Supreme Court clarified that "[t]he punishment for indirect contempt may be remedial to coerce the defendant's behavior, or it may be penal to punish the defendant for disobedient or disorderly behavior. The legislature has provided for a fine and imprisonment as punishment for both direct contempt and indirect contempt. If the imprisonment is for a definite period of time, its purpose is penal and *cannot be shortened by compliance or by a promise to comply with a court order. If the disobedience is a completed act, then the imprisonment must be penal rather than coercive.* In contrast, if the purpose is to coerce the defendant to comply with a court order, purge may be properly allowed and sometimes statutorily required. The statutes do not make a distinction between penal and coercive punishment based on the style of the case or who initiates the proceedings." *Henry v. Schmidt*, 2004 OK 34, ¶ 13, 91 P.3d 651, 654 (footnotes omitted) (emphasis added).

where such facts occur." Okla. Sup. Ct. R. 1.11(e)(1). The reviewing court should not accept factual argument that is unsupported by record citations. *See Matter of Rich*, 1979 OK 173, 604 P.2d 1248, 1253.

6.  **This appeal should be dismissed because Mr. Wallace failed to ensure timely completion of the record on appeal.**

   The appealed-from order was filed on November 23, 2004. Mr. Wallace filed his Petition in Error on November 29, 2004. On September 28, 2005, the Supreme Court took notice of Mr. Wallace's delay in fulfilling the requirements of the Supreme Court Rules. The Supreme Court's September 28, 2005 Order in this appeal stated that the appeal would be dismissed if the notice of completion of record was not filed by October 11, 2005. The notice of completion of record was not filed until October 12, 2005, one day *after* the deadline set by the Court in its September 28, 2005 Order. Whether measured by the terms of Supreme Court Rule 1.34 or the Court's September 28, 2005 Order, the record on appeal was not completed within the time limit imposed by the Supreme Court. Furthermore, the Oklahoma Supreme Court has determined that the delay in completion of the record was the result of dilatory conduct by Mr. Wallace and his counsel. On October 20, 2005, the Supreme Court issued an order requesting more information regarding the timing of Mr. Wallace's payment for transcription costs. On November 22, 2005, the Supreme Court issued an order noting the failure of Mr. Wallace and his counsel to pay transcription costs in a timely manner.

   Although the Supreme Court's November 22, 2005 Order directed Mr. Wallace's attention to the Supreme Court Rules, no other action was taken. The November 22, 2005 Order does not resolve the issue of whether further action might be taken based upon Mr. Wallace's failure to comply with the Oklahoma Supreme Court Rules. With this Answer Brief, Trust Company and Mr. Saffa respectfully request that the Court dismiss this appeal based upon Mr. Wallace's failure to comply with Supreme Court Rule 1.34(g). Rule 1.34(g) requires that "[t]he

12

appealing party, whether an appellant, counter or cross-appellant, bears responsibility to ensure timely preparation of an adequate record to review the issues urged by that party. The appealing party must timely order and pay for transcripts, designate record, monitor proper completion in the trial court, and request any extensions of time if necessary for the performance of duties of the court reporter or district court clerk." Okla. Sup. Ct. R. 1.34(g).

Rule 1.2 of the Oklahoma Supreme Court Rules states that "[c]ompliance with these rules is required. In case of failure to comply with any rule or order of the Court, the Court may continue or dismiss a cause, reverse or affirm the judgment appealed, render judgment, strike a filing, assess costs or take any other action it deems proper." Okla. Sup. Ct. R. 1.2. The Oklahoma Supreme Court Rules, therefore, support the requested relief of dismissal of this appeal. Dismissal is further supported by Mr. Wallace's long pattern of dilatory and disruptive litigation conduct. Mr. Wallace has filed numerous appeals and original actions with the Oklahoma Supreme Court. In these proceedings, Mr. Wallace frequently ignores the requirements of the Oklahoma Supreme Court Rules. This conduct should not be tolerated or condoned. Dismissal of this appeal would send a clear message to Mr. Wallace that compliance with the Oklahoma Supreme Court Rules truly is required, as stated by Rule 1.2.

7.      **Mr. Wallace's challenge against the facial validity of the November 23, 2004 Judgment and Sentence is unsupported by the record on appeal.**

Mr. Wallace is incorrect when he argues, in Proposition IV of his December 30, 2005 Brief in Chief, that the trial court failed to comply with Okla. Stat. tit. 21, § 568. Section 568 requires that "[w]henever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court." Okla. Stat. tit. 21, § 568. The term "order for confinement" is not defined in Oklahoma law, nor does Oklahoma law define the level of detail required for a recitation of "the substance of the offense."

13

The Supreme Court has instructed that "the order of confinement must set forth the facts constituting the contempt, and that it is void unless it shows on its face facts sufficient to constitute a legal contempt, mere conclusions being insufficient." *Ex parte Hibler*, 1929 OK 401, ¶ 18, 281 P. 144, 146. In his December 30, 2005 Brief in Chief, Mr. Wallace does not explain how it is that the recitation of facts contained in the November 23, 2004 Judgment and Sentence is insufficient. On page 19 of his Brief in Chief, Mr. Wallace argues that the Judgment and Sentence "simply incorporates the substance of Wallace's alleged offense by reference." [12/30/2005 Brief in Chief, at p. 19.] It is true that the Judgment and Sentence references the May 27, 2004 Application for Citation of Contempt. [R. 1471, Judgment and Sentence, at p. 4.] The Judgment and Sentence also references the September 2, 2004 Pretrial Conference Order, a judicial act that is merged into the Judgment and Sentence. *See Myers v. Maxey*, 1995 OK CIV APP 148, 915 P.2d 940, 944.

More importantly, the Judgment and Sentence contains a description of the contumacious conduct that was the subject of the contempt conviction. On page 4 of the Judgment and Sentence, the trial court describes the contumacious conduct as the commencement of a lawsuit in the United States District Court for the District of Columbia. [R. 1471, Judgment and Sentence, at p. 4.] Review of the September 2, 2004 Pretrial Conference Order shows that this is precisely the "facts constituting contempt" that were the focus of the contempt proceedings. [R. 1273, 9/2/2004 Pretrial Order, at p. 2.] Indeed, a review of the May 27, 2004 Application for Citation of Contempt also shows that the commencement of the lawsuit in the United States District Court for the District of Columbia is the contumacious act

that caused the initiation of contempt proceedings.[6] [R. 1034, Application, at pp. 1, 2.] Thus, the record on appeal shows that the November 23, 2004 Judgment and Sentence fully complies with the requirements of Okla. Stat. tit. 21, § 568.

If the Supreme Court determines that the November 23, 2004 Judgment and Sentence does not comply with Okla. Stat. tit. 21, § 568, the appropriate remedy is remand with instructions to correct any such defect in the Judgment and Sentence. "If the court in the first instance had jurisdiction to render judgment and sentence defendant, a defect in the commitment may be corrected during the term of the commitment." *Ex parte Murray*, 1923 OK CR, 54 Okl. Cr. 437, 23 P.2d 220, 221. The record on appeal shows that the term of commitment is currently stayed pending appeal. [R. 1471, Judgment and Sentence, at p. 4.] Therefore, any required amendment to the Judgment and Sentence could be accomplished *before* Mr. Wallace is confined.

Mr. Wallace's reliance upon *Busby v. State*, 1969 OK CR 13, 449 P.2d 718, as support for his request for reversal of the contempt conviction, is misplaced. The *Busby* Court reversed a conviction for *direct contempt* after finding that the contempt took place *outside the presence of the trial court*. *Busby v. State*, 1969 OK CR 13, ¶¶ 3-4, 449 P.2d 718. There is no such error here. If the only error is a defect in the November 23, 2004 Judgment and Sentence, then the appropriate remedy is remand with instructions to amend, as described in the preceding paragraph of this Answer Brief.

---

[6]      Another recitation of the facts constituting contempt can be found in the jury instructions. [R. 1359, 9/10/2004 Statement of the Case, at pp. 1-2.] Lest there be any concern, Mr. Wallace was fully aware of the nature of the conduct that was the subject of the contempt proceedings. [R. 1034, Application, at pp. 1, 2; R. 1273, 9/2/2004 Pretrial Order, at p. 2; R. 1359, 9/10/2004 Statement of the Case, at pp. 1-2; R. 1471, Judgment and Sentence, at p. 4.]

8.    **Mr. Wallace failed to preserve for appeal any and all issues regarding the validity of the temporary restraining order that he violated.**

The record on appeal contains no indication that Mr. Wallace ever raised the issue of whether the Temporary Restraining Order violated by Mr. Wallace was an "order lawfully issued by court" for purposes of Okla. Stat. tit. 21, § 565. The issue was not raised by Mr. Wallace in the September 2, 2004 Pretrial Conference Order. [R. 1273, 9/2/2004 Pretrial Order, at p. 2, ¶ 4.] In his December 30, 2005 Brief in Chief, Mr. Wallace fails to identify where, in the record, he preserved such an objection. [12/30/2005 Brief in Chief, at pp. 20-21.] Mr. Wallace asserts that he "repeatedly asked the district court and opposing counsel for legal authority that would warrant the Tulsa County District Court's enjoining him from filing trust-related claims in any other court . . . ." [12/30/2005 Brief in Chief, at p. 20.] This assertion, however, is unsupported by a citation to the record on appeal. Instead, Mr. Wallace cites to a transcript that is not included in the record on appeal. [*Id.*] As noted by the *Frey* Court, "the reviewing court is always limited to the issues actually presented below, as reflected by the record." *Frey v. Independence Fire & Cas. Co.*, 1985 OK 25, ¶ 6, 698 P.2d 17. As a result, the issue of whether the Temporary Restraining Order was an "order lawfully issued by court" for purposes of Okla. Stat. tit. 21, § 565 cannot be addressed within this appeal.

9.    **Mr. Wallace cannot use an appeal from a contempt conviction to challenge the validity of the injunction that he violated.**

Even if Mr. Wallace had timely raised the issues that he raises now regarding the lawfulness of the Temporary Restraining Order, these issues would be wholly without merit. "[M]ere errors in the proceeding in which the order of injunction is granted, or irregularities in the form of said order, do not constitute grounds or justification for disobeying the order of injunction or relieve one from punishment for contempt where the proceedings are not void." *Brown v. State*, 1949 OK CR, 89 Okl. Cr. 443, 446, 209 P.2d 715. "Here, the order was based

16

upon jurisdiction of the person, of the subject matter, and authority under the law to enter the order, and we will not go behind the same. But had it been erroneously entered, with the first two elements of jurisdiction present, the fact of erroneous entry alone would not constitute a justification for the violation of the order of injunction, for only dissolution of the order would afford protection." *Id.* at 446-47 (citation omitted). "The proper manner for challenging correctness of an adverse ruling is by appeal and not by disobedience." *Whillock v. Whillock,* 1976 OK 51, ¶ 13, 550 P.2d 558. The original controversy should not be retried on appeal from the contempt. To do otherwise "would encourage experimentation with disobedience." *Id.,* 1976 OK 51, ¶ 15, 550 P.2d 558.

### 10.    The temporary restraining order is valid.

Setting aside for a moment the facts that Mr. Wallace has waived any challenge against the terms of the temporary restraining order and cannot challenge a temporary restraining order on appeal from a contempt conviction, the terms of the temporary restraining order represent a valid exercise of judicial power. "Generally, a burden on a party's right of access to the courts will be upheld as long as it is reasonable." *Firelock, Inc. v. District Court,* 776 P.2d 1090, 1096 (Colo. 1989). Restraints against abusive litigants have been upheld where some right of access to the courts is preserved by the injunction. *See Werner v. Utah,* 32 F.3d 1446, 1447-48 (10th Cir. 1994); *Board of County Commissioners v. Winslow,* 706 P.2d 792, 794-95 (Colo. 1985); *People v. Spencer,* 524 P.2d 1084, 1086 (Colo. 1974); *Huber v. Franklin County Community School Corp.,* 507 N.E.2d 233, 238 (Ind. 1987) ("Injunctive relief may be granted when the plaintiff's production of litigation amounts to an abuse of process."). In 1928, the Oklahoma Supreme Court recognized the power of equity to restrain an action at law. *Davis v. District Court,* 1928 OK 33, ¶ 13, 264 P. 176. *See also Haggard v. Calhoun,* 1956 OK 62, 294 P.2d 836, 840 (affirming an injunction against proceeding further before the Industrial Commission).

This power, of course, is to be used only sparingly. *See Davis v. District Court*, 1928 OK 33, ¶ 13, 264 P. 176.

Here, the trial court used the force of injunction in the most sparing means possible. During the April 16, 2004 hearing on the March 26, 2004 Motion for Temporary Restraining Order, the trial court carefully questioned the attorneys for Trust Company and Mr. Saffa regarding the appropriate remedy for Mr. Wallace's abusive litigation practices.[7] The trial court was presented with a history of Mr. Wallace's far-reaching litigation conduct, with which the trial court was already familiar. [R. 922, Motion for TRO, at pp. 1-123; R. 1017, TRO, at pp. 2-3, ¶ 3; R. 1834, 4/16/2004 Tr., at pp. 3-5, 7-8, 9, 10, 11-18, 24-31, 34-35.] The trial court found that "this is truly an exceptional case," "extraordinary," and "unprecedented in the experiences of this Court." [R. 1017, TRO, at p. 3, ¶ 4; R. 1834, 4/16/2004 Tr., at p. 35, l. 10.] The trial court concluded that Mr. Wallace had engaged in vexatious, oppressive, frivolous, senseless, inappropriate, and wasteful behavior. [R. 1017, TRO, at p. 3, ¶ 3; R. 1834, 4/16/2004 Tr., at p. 35, l. 22; *id.*, at p. 36, ll. 21-22.] The trial court concluded that Mr. Wallace's vexatious behavior had the effect of depleting assets intended for other, innocent beneficiaries. [R. 1017, TRO, at p. 3, ¶ 3; R. 1834, 4/16/2004 Tr., at p. 35, l. 23 through p. 36, l. 1.] The trial court held that the temporary restraining order "was entered into only because of the extreme behavior." [R. 1017, TRO, at pp. 3-4, ¶ 4; R. 1834, 4/16/2004 Tr., at p. 36, ll. 9-10.]

Having reached these determinations, the trial court crafted a remedy that was narrow in scope, requiring that "all matters relating to the administration of this trust must be brought solely before this Court." [R. 1834, 4/16/2004 Tr., at p. 36, ll. 13-15. *See also* R. 1017, TRO, at

---

[7]    This questioning appears throughout the 42-page transcript of the proceedings that took place on April 16, 2004. [R. 1834, 4/16/2004 Tr.] A review of the April 16, 2004 transcript, in toto, would demonstrate the utmost care exercised by the trial court in evaluating the request for extraordinary relief and in crafting a remedy designed to protect the trusts placed within the trial court's supervision pursuant to Okla. Stat. tit. 60, § 175.23.

pp. 4-5.] The trial court rested this remedy, in part, upon the structure of Okla. Stat. tit. 60, §175.23,[8] which gives the district courts the power to supervise the administration of trusts for the purpose of reducing litigation. [R. 1834, 4/16/2004 Tr., at p. 36, ll. 16-22. *See id.*, at p. 19, l. 2 through p. 20, l. 10.]

These narrow restrictions, based upon extraordinary circumstances, are most certainly consistent with Oklahoma jurisprudence regarding the open-courts provision of the Oklahoma Constitution. *Davis v. District Court*, 1928 OK 33, ¶ 13, 264 P. 176; *Haggard v. Calhoun*, 1956 OK 62, 294 P.2d 836, 840.

**11.     Mr. Wallace is unable to meet the requirements for reversal of a jury verdict for "insufficient evidence."**

In barely one page of argument, appearing on pages 21 and 22 of his 24-page Brief in Chief, Mr. Wallace suggests that the jury verdict against him is not supported by sufficient evidence on the willfulness element of indirect contempt of court. [12/30/2005 Brief in Chief, at pp. 21-22.] This argument rests on the bald assertion that "there is no evidence" that Mr. Wallace "knew of the TRO and its terms *before* he filed his civil rights action in Washington, D.C. on April 30, 2004." [12/30/2005 Brief in Chief, at p. 21 (emphasis in original).] In urging this basis for reversal, Mr. Wallace has overlooked both the standard of review and the state of the record.

First, regarding the standard of review, the appellate court is required to "indulge in the presumption that a trial court's decision is correct; every fact not disputed by the record must be regarded as supporting the trial court's judgment." *Pryor v. Mid-West Investigations & Process Serving, Inc.*, 2000 OK CIV APP 22, ¶ 6, 999 P.2d 452, 454 (citing *First Federal Sav. & Loan*

---

[8]     Actions based upon Section 175.23 are often compared to interpleader actions, although the actions are different in many ways. It is quite common for an injunction to issue as part of an interpleader action, enjoining the parties from pursuing any further claims against the stakeholder outside of the interpleader action. *See, e.g., In re Enron Corp. Securities Litig.*, 391 F. Supp. 2d 541, 549 (S.D. Tex. 2005).

*Assn. v. Nath*, 1992 OK 129, 839 P.2d 1336, 1342). "The appellant has the responsibility for incorporating into the appellate record all materials necessary to secure corrective relief from the trial court's adverse decision." *Id.* (citing *Davidson v. Gregory*, 1989 OK 87, 780 P.2d 679, 682). "Where the record does not contain evidence presented at trial and no errors appearing on the face of the judgment roll are assigned, there is nothing for us to review and the trial court's judgment may not be disturbed." *Matter of Rich*, 1979 OK 173, 604 P.2d 1248, 1253. Here, Mr. Wallace has failed to include the jury trial transcript in the record on appeal. As a result, "there is nothing . . . to review and the trial court's judgment may not be disturbed."

Furthermore, "[i]n an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon." *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287 (citing *Hames v. Anderson*, 571 P.2d 831, 833 (Okla. 1977)). "Finally, the sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it." *Id.* (citing *Park v. Security Bank & Trust Co.*, 512 P.2d 113, 118 (Okla. 1973)).

Against this stringent standard, Mr. Wallace's insufficient-evidence challenge must fail. Even though Mr. Wallace failed to designate the jury trial transcript, the record contains ample "evidence tending to support" Mr. Wallace's knowledge "of the TRO and its terms before he filed his civil rights action in Washington, D.C. on April 30, 2004." Specifically, the record shows that Mr. Wallace had notice of the March 26, 2004 Motion for Temporary Restraining Order. [R. 922, Motion for TRO, at p. 14; R. 923, Notice, at pp. 1, 2; R. 1783, Petitioners' Ex.

20

"6", at p. 14; R. 1783, Petitioners' Ex. "7", at pp. 1, 2.] The record shows that Mr. Wallace was aware of the proceedings on the March 26, 2004 Motion for Temporary Restraining Order. [R. 1017, TRO, at p. 1; R. 1833, 4/2/2004 Tr., at p. 1; *id.* at p. 132, ll. 16-24; *id.* at p. 134, l. 12 through p. 135, l. 5; R. 938, 4/5/2004 Order; R. 1783, Petitioners' Ex. "8".] The record shows that Mr. Wallace failed to appear for the continuation of the proceedings on the March 26, 2004 Motion for Temporary Restraining Order, despite having notice of the proceedings. [R. 1017, TRO, at p. 2; R. 1834, 4/16/2004 Tr., at p. 2, ll. 12-17 R. 1783, Petitioners' Ex. "9"; R. 1783, Petitioners' Ex. "10".] The record shows that the April 21, 2004 Temporary Restraining Order was served on Mr. Wallace by mail, in the manner provided by Okla. Stat. tit. 12, § 2005. [R. 1023, Affidavit of Service; R. 1783, Petitioners' Ex. "11".] Oklahoma law provides that "[a]n injunction binds the party from the time he has notice thereof, and the undertaking required by the applicant therefor is executed."[9] Okla. Stat. tit. 12, § 1388. Because Mr. Wallace had notice of the March 25, 2002 Motion for Temporary Restraining Order and the proceedings on the Motion, the service requirements of Okla. Stat. tit. 12, § 1387 did not apply. *See Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126, (2d Cir. 1979) (holding that personal service of an injunction is not required when the contemnor received actual notice of the order). These facts show that Mr. Wallace had notice of the Temporary Restraining Order.

The record on appeal includes the "exhibit book" from the jury trial that occurred on September 9 and 10, 2004. [R. 1783, Exhibit Book.] The cover page of the exhibit book shows that Petitioners' Exhibits 1, 6, 7, 8, 9, 10, 11, 13, 14-A, and 20 were admitted into evidence. [R. 1783, Exhibit Book (cover page).] As outlined above, Petitioners' Exhibits 6, 7, 8, 9, 10, and 11 affirmatively demonstrate that Mr. Wallace had notice of the Temporary Restraining Order.

---

[9]    The Temporary Restraining Order did not require an undertaking. [R. 1017, TRO.]

These facts show, by direct evidence and by reasonable inference, that Mr. Wallace violated the Temporary Restraining Order willfully. The verdict should, therefore, be affirmed.

12. **The mental-health provisions of the Judgment and Sentence are reasonable and appropriate conditions upon a deferred sentence.**

Mr. Wallace is incorrect in asserting that the Oklahoma Mental Health Law, Okla. Stat. tit. 43A, § 5-207, 5-208, 5-209, provides the only authority for a state court to impose mental health treatment. Other than these statutory provisions, Mr. Wallace's argument on this point is unsupported by citation to legal authority and should not be considered. *See Peters v. Golden Oil Co.*, 1979 OK 123, 600 P.2d 330, 331 (holding that unsupported assignments of error are to be treated as waived). Nonetheless, Oklahoma law fully supports the trial court's thoughtful approach to the penalty imposed by the November 23, 2004 Judgment and Sentence. [R. 1471, Judgment and Sentence, at pp. 2, 3.] The powers of Oklahoma courts in imposing sentencing include the power to "[s]uspend the execution of sentence in whole or in part, with or without probation. The court, in addition, may order the convicted defendant at the time of sentencing or at any time during the suspended sentence to do one or more of the following:

...

p.    to perform one or more courses of treatment, education or rehabilitation for any conditions, behaviors, deficiencies or disorders which may contribute to criminal conduct, including but not limited to alcohol and substance abuse, mental health, emotional health, physical health, propensity for violence, antisocial behavior, personality or attitudes, deviant sexual behavior, child development, parenting assistance, job skills, vocational-technical skills, domestic relations, literacy, education, or any other identifiable deficiency which may be treated appropriately in the community and for which a certified provider or a program recognized by the court as having significant positive impact exists in the community. Any treatment, education or rehabilitation provider required to be certified pursuant to law or rule shall be certified by the appropriate state agency or a national organization,

....

Okla. Stat. tit. 22, § 991a(A)(1)(p).

13.    **Mr. Wallace's arguments regarding assistance of counsel are erroneous and unsupported by the record on appeal.**

Contrary to Mr. Wallace's argument on page 23 of this December 30, 2005 Brief in Chief, the record on appeal shows "an intelligent, competent and knowing waiver" of Mr. Wallace's right to assistance of counsel. During the September 2, 2004 pretrial conference, the trial court explained the right to assistance of counsel pursuant to Rule 29 of the Rules for District Courts. [R. 1568, 9/2/2004 Tr., at p. 4, l. 7 through p. 5, l. 16.] In response, Mr. Wallace stated, "I do not wish to employ counsel . . . . I do not want counsel appointed for me . . . ." [*Id.*, at p. 5, ll. 19-20; *id.*, at p. 6, ll. 3-4.] These statements, however, were intermixed with other conflicting statements in which Mr. Wallace suggested that he be provided funds from the family trusts with which he would retain a lawyer to sit next to him and assist him as he represented himself on a pro-se basis. Because of the conflicting statements, the Court again asked, "Do you want counsel to represent you in this case?" [*Id.*, at p. 6, ll. 17-18.] In response, Mr. Wallace stated, "No, I do not." [*Id.*, at p. 6, l. 19.] Following this statement, though, Mr. Wallace again explained that he wished to have a lawyer to assist him in his pro-se representation of himself. "I do not want an attorney appointed for me or an attorney to speak for me. I need an attorney to help me with my research and prepare for the jury trial." [*Id.* at p. 7, ll. 1-4.]

By this point in the proceedings, Mr. Wallace had made his position quite clear. But in order to ensure "an intelligent, competent and knowing waiver" of Mr. Wallace's right to assistance of counsel, the trial court engaged Mr. Wallace further.

THE COURT: You have a right to counsel. Do you understand that?

MR. WALLACE: Yes.

THE COURT: In this civil contempt matter.

MR. WALLACE: Yes.

THE COURT: Correct?  Do you desire to have counsel in this civil contempt matter?

MR. WALLACE:  Only as assistance of counsel.  I do not want a lawyer appointed for me in this case.

. . .

THE COURT:  . . . Mr. Wallace, if I'm to understand you then, you're saying you do not wish to have counsel defend you in this matter, but you do wish the assistance of counsel to help you in your representation of yourself; is that correct?

MR. WALLACE:  That's correct, Your Honor.  I need for the Trust Company of Oklahoma and Ronald Saffa that drew up the February 12, 1998 Amendment Number one to release funds so that I can have funds to do subpoenas, summons, depositions, and the costs of – that I'm going to have to incur to prepare my defense.

THE COURT:  Are you currently financially unable to employ counsel?

MR. WALLACE:  I'm not financially unable to employ counsel that this Court is asking me to employ.  I do not want a court-appointed lawyer.  I want my own assistance of counsel.  There are two different jurisdictions.  One is a lawyer that speaks for me and I sit quietly until he is finished.  I do not want that.  I will represent myself with assistance of counsel to make sure I meet the Court rules, the laws of procedure, and be able to defend myself in preparation.

THE COURT:  All right.  Well, I just want to be entirely clear on this because I don't normally conduct criminal matters, so I don't – I'm not involved with the appointment of counsel to defend criminal defendants, but if one were to be appointed for you, my understanding is that that person would be appointed to defend you, so in that respect, you are entirely right.  That would be the job of any court-appointed attorney.  He would be appointed to be your advocate.  And you do not wish to have that done, correct?

MR. WALLACE:  That is correct.

THE COURT:  All right.  You understand, though, that you have a right, if you can establish indigency, to the Court appointing one to defend you, correct?

MR. WALLACE:  I understand.  The indigency that I am experiencing at any time since I have been before this Court is the direct result of the trustees' denial of following the covenants of the trust and disbursing funds to protect the beneficiaries.

THE COURT:  We'll get to that.  But you understand, though – the question I have is a simpler one than that.  You understand that if you can establish indigency at the present time, regardless of the reason, that you have a right to

have the Court appoint you a counsel, correct, to defend you in this matter? You understand that?

MR. WALLACE: I understand that, yes.

[R. 1568, 9/2/2004 Tr., at p. 7, l. 5 through p. 10, l. 7.]

After discussing the terms of the various trusts at issue, the trial court again returned to

the issue of waiver of the right to assistance of counsel:

THE COURT: With due [respect], the request to advance funds for the hiring of any attorney to assist Mr. Wallace to – in representing himself in this matter will be denied. I do not believe that Article 11.13 [of the controlling trust instrument] would pertain to this indirect civil contempt matter for the reasons stated by Mr. Poe.

Now, back to my question, because I want to make sure this is a knowing and intelligent waiver, Mr. Wallace. You as I understand it, are waiving your right to counsel to defend you in this upcoming civil contempt matter; is that correct?

MR. WALLACE: That's correct.

[*Id.* at p. 25, ll. 2-13.]

It is, therefore, clear that Mr. Wallace's request for assistance of counsel was not a

request for appointment of counsel to conduct the trial for him as his lawyer. Rather, in

response to repeated questions from the trial court, Mr. Wallace repeatedly responded that he

did not want the court to appoint a lawyer to represent him and conduct proceedings for him.

Mr. Wallace wanted to represent himself. Mr. Wallace wanted an attorney to sit at counsel table

with him and "assist him" by whispering in his ear, rather than by speaking for him.

Furthermore, Mr. Wallace made very clear on the record that he wanted the Court to require the

Appellees, as trustees, to pay for the lawyer.

Mr. Wallace expressly waived his right to counsel during the pretrial conference on

September 2, 2004. [R. 1568, 9/2/2004 Tr., at p. 7, l. 5 through p. 10, l. 7; *id.* at p. 25, ll. 2-13.]

Mr. Wallace was advised of his right to counsel pursuant to District Court Rule 29. [R. 1568,

9/2/2004 Tr., at p. 4, l. 7 through p. 5, l. 16.] Mr. Wallace stated that he did not wish to have a

lawyer appointed by the Court to represent him, but rather, that he wished to have a lawyer

assist him in representing himself. [R. 1568, 9/2/2004 Tr., at p. 7, l. 5 through p. 10, l. 7.] Mr.

Wallace has a constitutional right to represent himself.[10] The court may allow this to occur if it

is satisfied that the choice has been made knowingly. There is no constitutional requirement

that the court provide "stand-by" counsel to a defendant who has exercised his constitutional

right to represent himself. *See, e.g.*, *United States v. Webster*, 84 F.3d 1056 (8th Cir. 1996)

("Appointment of standby counsel is within the discretion of the district court, and a pro se

defendant does not enjoy an absolute right to standby counsel."); *Eady v. State*, 695 So. 2d 752

(Fla. Dist. Ct. App. 1st Dist. 1997), *review denied*, 699 So. 2d 1372 (Fla. 1997) (noting right to

proceed pro se, noting right of defendant to cease representing himself in the midst of criminal

proceedings, and observing absence of constitutional right to stand-by counsel under such

circumstances). *See also* 21A Am. Jur. 2d Criminal Law § 1248.

On September 3, 2004, the day after the pretrial conference described above, Mr.

Wallace filed a petition for writ of mandamus in the Oklahoma Supreme Court, Case No.

101158. In his petition for writ of mandamus, Mr. Wallace requested a stay of the trial and a

writ requiring the trial court to allow the "stand-by counsel" arrangement urged by Mr. Wallace

during the September 2, 2004 pretrial conference.[11] In the materials submitted by Mr. Wallace

in Case No. 101158, Mr. Wallace relied heavily on *McKaskle v. Wiggins*, 465 U.S. 168, 178

(1984). *McKaskle*, however, stands for the proposition that stand-by counsel cannot interfere

---

[10] *Faretta v. California*, 422 U.S. 806 (1975), stands for the constitutional right of self-representation. The defendant may proceed without counsel. The state may not force a lawyer on an unwilling defendant.

[11] Mr. Wallace's December 30, 2005 Brief in Chief *does not* raise the "stand-by counsel" arrangement that had been urged by Mr. Wallace during the September 2, 2004 pretrial conference and Case No. 101158. As a result, Mr. Wallace has waived this argument for purposes of appeal. *See Peters v. Golden Oil Co.*, 1979 OK 123, 600 P.2d 330, 331.

with the defendant's right to represent himself.  Unwelcome actions by stand-by counsel can erode the *Faretta* right of self-representation.  In the same materials,  submitted in Case No. 101158, Mr. Wallace mis-cited *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978).  That decision stands for the proposition that: "Courts have consistently interpreted [28 U.S.C. §1654] as stating a defendant's rights [to self-representation and to assistance of counsel] in the *disjunctive*." *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978) (emphasis added).

In materials submitted in Case No. 101158, Mr. Wallace failed to cite the 1982 decision by the Oklahoma Court of Criminal Appeals, *Faulkner v. State*, 1982 OK CR 84, 646 P.2d 1304, 1309, holding that one may not both represent himself and at the same time have court-appointed counsel.  One or the other must be in charge of the defense in order to preserve orderly procedure.  Under Oklahoma law, the trial court may appoint stand-by counsel, but is not required to do so.  Such a decision is a matter of discretion for the trial court.  *Parker v. State*, 1976 OK CR 293, 556 P.2d 1298, 1301.  *See also Stiner v. State*, 1975 OK CR 156, 539 P.2d 750, 753.

From his statements on the record, it is not clear at all that Mr. Wallace desired to have stand-by counsel.  Indeed, Mr. Wallace's request was more akin to a hybrid approach, where a lawyer would be appointed to assist him but not speak for him.  In *Stiner v. State*, 1975 OK CR 156, 539 P.2d 750, 753, the Oklahoma Court of Criminal Appeals noted that the federal courts "have consistently recognized that there is no constitutional right to hybrid representation partially pro se and partially by counsel."

Mr. Wallace was very clear in stating his desire to represent himself.  All that is required for an effective election to self-represent is that the defendant have full knowledge or adequate warning concerning his right and a clear intent to exercise it.  *Johnson v. State*, 1976 OK CR

27

292, 556 P.2d 1285, 1295-96.[12]  As noted above, Mr. Wallace was repeatedly questioned by the trial court regarding Mr. Wallace's desire to represent himself.  Mr. Wallace was adamant that he desired to represent himself, and that he did not desire to have a lawyer speak for him.

It is worth noting that the Court in *Johnson v. State*, 1976 OK CR 292, 556 P.2d 1285, 1297, strongly encouraged trial courts to appoint stand-by counsel in cases where the defendant elects to represent himself.  "It is not difficult to envision situations where a defendant – either acting in good faith but handicapped by ignorance of the law, or through preplanned design – causes a mistrial or creates reversible error."  *Johnson v. State*, 1976 OK CR 292, 556 P.2d 1285, 1297.  This strong encouragement by the Oklahoma Court of Criminal Appeals is not enough to warrant relief in this appeal.  The authorities outlined above demonstrate that there is no constitutional right to stand-by counsel.  It is not reversible error for a trial court to refrain from appointing stand-by counsel.  While the *Johnson* Court suggests that such a decision may create a possibility for mistrial or other reversible error, the failure to appoint stand-by counsel, in and of itself, is not error under the authorities discussed above.  Here, Mr. Wallace's history of abusive litigation and repeated efforts to delay proceedings serve as adequate grounds for a discretionary decision to refrain from appointing stand-by counsel.

Mr. Wallace's December 30, 2005 Brief in Chief ignores all of these issues, and, instead, makes the *unsupported* assertion that "[t]he record in this case does not show" an intelligent, competent, and knowing waiver of the right to assistance of counsel.  [Brief in Chief, at p. 23.]  As demonstrated in more detail above, this statement by Mr. Wallace in his December 30, 2005 Brief in Chief is so fundamentally contradicted by the record on appeal, [R. 1568, 9/2/2004 Tr.,

---

[12]    As was the case in *Johnson v. State*, Mr. Wallace "cannot be considered ignorant of the task he faced in representing himself."  *Johnson v. State*, 1976 OK CR 292, 556 P.2d 1285, 1295-96.  The record on appeal and, indeed, the Supreme Court's own records will reveal repeated actions by Mr. Wallace in which Mr. Wallace represented himself on a pro-se basis.

at p. 4, l. 7 through p. 5, l. 16; *id.*, at p. 5, ll. 19-20; *id.* at p. 6, ll. 3-4; *id.* at p. 6, ll. 17-19; *id.*, at p. 7, l. 5 through p. 10, l. 7; id. at p. 25, ll. 2-13], that sanctions might be warranted.

The only new argument on this issue, raised by Mr. Wallace in his December 30, 2005 Brief in Chief, is his assertion that the record shows a "specific request for a continuance, upon learning that the district judge had withdrawn his offer to dismiss the contempt charge against him, so he could secure the assistance of counsel and the trial court's denial of both requests." [12/30/2005 Brief in Chief, at p. 23.] This statement is unsupported by citations to the record. Even in his summary of the case, Mr. Wallace's descriptions of these events fail to include citations to the record on appeal. [12/30/2005 Brief in Chief, at pp. 12-13.] Mr. Wallace cites to a transcript that was not designated as part of the record on appeal. [12/30/2005 Brief in Chief, at p. 13.] Mr. Wallace cites to a request for dismissal filed on September 8, 2004, but that document contains no mention of the assistance-of-counsel issue. [R. 1317, 9/8/2004 Request.] Mr. Wallace describes a request for continuance made on September 9, 2004, but the September 9, 2004 "motion for continuance" contained in the record on appeal contains no mention of the assistance-of-counsel issue. [R. 1340, 9/9/2004 Motion for Continuance.] Although Mr. Wallace's December 30, 2004 Brief in Chief makes no reference to it, the record contains a "second instanter motion to dismiss" filed on September 10, 2004 (the second day of trial), in which Mr. Wallace re-urges his request for a hybrid style of assistance of counsel. [R. 1342, 9/10/2004 Second Motion to Dismiss.] These same authorities were addressed to the Supreme Court in Case No. 101158, and are addressed above in this Answer Brief – but are missing from Mr. Wallace's December 30, 2005 Brief in Chief.

## CONCLUSION

Based on the argument and authorities presented above, the Appellees, The Trust Company of Oklahoma and Ronald J. Saffa, respectfully urge the Court to dismiss this appeal or affirm the Judgment and Sentence in its entirety.

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By: _____
Jon E. Brightmire, OBA No. 11623
320 South Boston Ave., Ste. 500
Tulsa, Oklahoma 74103-3725
918-582-1211; fax 918-591-5398
ATTORNEYS FOR APPELLEE,
THE TRUST COMPANY OF OKLAHOMA

Joined by:    James E. Poe, OBA No. 7198
COVINGTON & POE
111 West 5th Street, Ste. 740
Tulsa, Oklahoma 74103
918-585-5537; fax 585-5530
ATTORNEY FOR APPELLEE,
RONALD J. SAFFA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of February, 2006, a true and correct copy of the above and foregoing Answer Brief was mailed, with proper postage attached, to the following:

Joan Godlove, Esq.
2121 South Columbia, Ste. 500
Tulsa, Oklahoma  74114-3519

I further certify that a true and correct copy of the above document was filed with the Office of the Tulsa County District Court Clerk on the 8th day of February 2006.